# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JOANNE REULET, ET AL.**                               **CIVIL ACTION NO.**

**VERSUS**

                                                        **20-404-BAJ-EWD**

**LAMORAK INSURANCE COMPANY,**
**ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 4, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JOANNE REULET, ET AL.**                    CIVIL ACTION NO.

**VERSUS**

                                             **20-404-BAJ-EWD**

**LAMORAK INSURANCE COMPANY,**
**ET AL.**

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Before the Court is the Motion to Remand (the "Motion"), filed by Joanne Clement Reulet, Leslie Reulet Carrere, and Evan J. Reulet ("Plaintiffs").[1] The Motion is opposed by Defendant Hopeman Brothers, Inc. ("Hopeman")[2] and Huntington Ingalls Incorporated ("Avondale"),[3] Lamorak Insurance Company ("Lamorak"), and Albert Bossier, Jr. ("Bossier") (collectively, the "Avondale Defendants").[4]  As all elements of federal officer removal are met and the removal was timely filed, it is recommended[5] that the Motion be denied, and that this matter be referred for a scheduling conference.[6]

---

[1] R. Doc. 21 *and see* Replies at R. Docs. 36 and 43 and Response to Sur-Reply at R. Doc. 48.

[2] R. Doc. 30.

[3] Plaintiffs named "Huntington Ingalls Incorporated" (formerly Northrop Grumman Shipbuilding, Inc., formerly Northrop Grumman Ship Systems, Inc., formerly Avondale Industries, Inc., formerly Avondale Shipyards, Inc., and formerly Avondale Marine Ways, Inc.).  R. Doc. 1-1, ¶¶ 2-3.  However, the briefs refer to this entity as "Avondale," and this Report follows suit for the sake of consistency.  Lamorak is named as "as successor in interest to the liability for policies of insurance issued by Commercial Union Insurance Company, Employers Commercial Union Insurance Company, and American Employers Insurance Company).  R. Doc. 1-1, ¶ 2.

[4] R. Doc. 32 *and see* Sur-Reply at R. Doc. 47.

[5] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review."  *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).

[6] Entry of a scheduling order was deferred pending resolution of the Motion, because it raised jurisdictional issues.  R. Doc. 23.

## I.    Facts and Procedural Background

This is a civil action involving claims for damages based upon the injuries allegedly sustained by, and demise of, Kirk Reulet ("Decedent").[7]  According to Plaintiffs, Decedent was employed by Avondale from 1967 to 1972, and during Decedent's employment, he was exposed to asbestos on a daily basis.[8]  Decedent's father, Pierre Reulet ("Pierre"), worked for Avondale from 1964 to 1977, and Decedent was also exposed to asbestos on a daily basis from Pierre's clothing.[9]  Plaintiffs further allege that some of the asbestos that Decedent and Pierre were exposed to was manufactured, distributed and sold by Hopeman. During Decedent's and Pierre's employment with Avondale, Hopeman allegedly performed contracting work using asbestos-containing products, which exposed the men to asbestos.[10]  Decedent was diagnosed with mesothelioma in December 26, 2018, and died on January 2, 2019, as a result of his alleged exposures to asbestos from his work (and Pierre's) at Avondale, his employment with other Defendants that exposed him to asbestos, and his exposure to asbestos-containing products manufactured by Hopeman and others.[11]

On June 28, 2019, Plaintiffs filed their Petition for Damages ("Petition") against numerous defendants, including Hopeman and the Avondale Defendants, in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, alleging that Defendants are liable for the injuries

---

[7] R. Doc. 1-1.

[8] R. Doc. 1-1, ¶¶ 3, 10.

[9] R. Doc. 1-1, ¶¶ 3, 11-12.

[10] R. Doc. 1-1, ¶¶ 24, 25.

[11] R. Doc. 1-1, ¶¶ 10-13, 15-16, 23-26, 57, 83 *and see, e.g., id.* for Plaintiffs' allegations of liability borne by some of the other Defendants at ¶¶ 31-33 (Westinghouse, now CBS Corporation); ¶¶ 45-47 (General Electric); ¶¶ 52-58 (Eagle Inc., The McCarty Corporation, Taylor-Seidenbach, Inc., Bayer CropScience, Inc., Foster Wheeler, LLC, CBS Corporation, International Paper Company, and Uniroyal, Inc.); and ¶¶ 73-75 (CF Industries, Inc.). Plaintiffs allege that Bossier was an executive officer of Avondale who was responsible for Decedent's health and safety, was aware of the dangerous conditions presented by the asbestos, and was aware that Decedent would suffer from ill health effects from the asbestos, but withheld such knowledge from Decedent and failed to protect him.  R. Doc. 1-1, ¶¶ 3, 13-14, 17-21.  Plaintiffs allege that Lamorak bears liability as the insurer of Bossier, as well as other Defendants.  R. Doc. 1-1, ¶ 3 *and e.g.,* ¶¶ 6-7.

sustained by, and death of, Decedent due to his exposure to asbestos.[12] Plaintiffs alleged that, among other deficiencies, Avondale intentionally concealed the dangers of asbestos and was negligent in: failing to provide a safe place to work, failing to provide adequate measures to control the level of exposure to asbestos, and failing to warn or inform Decedent of the hazards of asbestos exposure.  Plaintiffs particularly alleged:

> All defendants had care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of [Plaintiff] and for which these defendants are liable under Louisiana law. However, with regard to Avondale and its executive officers, they are liable because they failed to properly handle and control the asbestos which was in their care, custody, and control. Petitioners are not alleging that Avondale and its executive officers are liable for the mere use of asbestos; rather, Avondale and its executive officers are liable for the misuse of asbestos, including but not limited to the failure to warn of the hazardous nature and dangers of asbestos and for the failure to take and implement reasonably safe and industrial hygiene measures, failure to train, and failure to adopt safety procedures for the safe installation and removal of asbestos.[13]

Plaintiffs alleged that the asbestos manufactured by Hopeman was unreasonably dangerous *per se* and defective in design which constituted a breach of warranty, and that Hopeman was aware of the dangers of asbestos exposure and strictly liable.[14]  On the basis of these allegations, Plaintiffs,

---

[12] R. Doc. 1-1, ¶¶ 10, 15-16, 57, 83.  In addition to Avondale, Bossier, and Lamorak, Plaintiffs also initially named: Eagle, Inc. (f/k/a Eagle Asbestos & Packing Company, Inc.); Bayer CropScience, Inc. (successor to Rhone Poulene AG Company, formerly AmChem Products, Inc., formerly Benjamin Foster Company); Foster Wheeler LLC (formerly Foster-Wheeler Corporation); General Electric Company; Hopeman Brothers, Inc.; The McCarty Corporation (Successor to McCarty Branton, Inc., and Predecessor and Successor to McCarty Insulation Sales, Inc.); Taylor-Seidenbach, Inc.; CBS Corporation (f/k/a Westinghouse Electric Corp.); Uniroyal, Inc.; International Paper Company (as successor to U.S. Plywood); The American Insurance Company; CF Industries, Inc., and Fireman's Fund Insurance Company.  R. Doc. 1-1, p. 1 and ¶ 2. Plaintiffs subsequently filed a First Supplemental and Amending Petition for Damages that named Aerojet Rocketdyne, Inc. (f/k/a Aerojet-General Corporation as successor to the liability of Barnard and Burk, Inc.) as an additional defendant. R. Doc. 1-6, pp. 110-112.
[13] R. Doc. 1-1, ¶¶ 13-21, and particularly, ¶ 18.  Plaintiffs' counsel has asserted the cited language in support of negligence claims against Avondale in other cases, and thus previously evaded federal officer removal due to the prevailing law at the time.  *See, e.g.*, *Dempster v. Lamorak Ins. Co.*, No. 18-6158,  2019 WL 117657, at **10, 14, 16 (E.D. La. Jan. 7, 2019) (granting remand on first removal and noting that prior Fifth Circuit authority "…concluded that negligence claims for failing to warn of the dangers of asbestos or to take safety precautions against asbestos exposure 'did not challenge actions taken under color of federal authority even though the government was responsible for the existence of the asbestos.'").
[14] R. Doc. 1, ¶¶ 24-28.

who are Decedent's surviving spouse and children, assert wrongful death and survival actions against all Defendants.[15]

The Avondale Defendants filed a Notice of Removal on June 25, 2020.[16]  To establish that removal was timely, the Avondale Defendants contended that the Petition did not link Decedent's alleged asbestos exposure to any vessels Avondale built for the federal government, and therefore, did not put them on notice that federal officer removal jurisdiction existed. Rather, the Avondale Defendants say they were first put on notice that Decedent's alleged exposures related to asbestos-containing materials installed on Lykes Lines cargo ships ("Lykes vessels") and/or U.S. Coast Guard Cutters built by Avondale pursuant to federal contracts at the June 23, 2020 deposition of Dwight Granier ("Granier"), Decedent's and Pierre's co-worker.[17]

Plaintiffs filed the instant Motion on July 24, 2020 alleging that the removal was untimely and that the removal was improper because the requirements for federal officer jurisdiction were lacking.[18]  This led to a flurry of briefing, including: Hopeman's opposition memorandum,[19] the Avondale Defendants' opposition memorandum,[20] Plaintiff's reply memorandum to each opposition,[21] the Avondale Defendants' sur-reply,[22] and Plaintiff's sur-reply response.[23] The two primary issues for the Court to consider are whether the requirements of federal officer removal have been established, and whether the removal was timely.

---

[15] R. Doc. 1-1, introductory paragraph and ¶¶ 16, 84.
[16] R. Doc. 1.
[17] R. Doc. 1, ¶¶ 3-5.
[18] R. Doc. 21-1.
[19] R. Doc. 30.
[20] R. Doc. 32.
[21] R. Docs. 36 & 43.
[22] R. Doc. 47.
[23] R. Doc. 48.

## II.    Law and Analysis

### A.  General Legal Standards Regarding Removal

Remand is proper if the court lacks federal officer removal jurisdiction.[24]   The removing defendant bears the burden of showing, if challenged, that removal based on Section 1442 was procedurally proper.[25]  A plaintiff challenging removal on the basis of a defect other than subject matter jurisdiction is required to do so within thirty days after the filing of the notice of removal.[26]

### B.  Legal Standards for Federal Officer Removal

#### 1.  General Purpose

As amended in 2011 and still effective, the federal officer removal statute at 28 U.S.C. § 1442(a)(1) provides, in pertinent part:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States ... :
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office ....[27]

The Supreme Court has explained that the purpose of this provision is to protect the lawful activities of the federal government from undue state interference.[28] Because the federal government "can act only through its officers and agents," it has a strong interest in ensuring that the states do not hinder those officers in the execution of their duties.[29]  If federal officers acting

---

[24] *See* 28 U.S.C. § 1447(c), *and see, e.g., City of Walker v. Louisiana through Dep't of Transportation & Dev.,* 877 F.3d 563, 571 (5th Cir. 2017) (affirming the district court's remand order as to federal officer jurisdiction because the appellants failed to meet their burden to show that the defendant was "acting under" a federal officer when it designed and built a project.)

[25] *Dempster,* 435 F. Supp. 3d at 720, *citing Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998).

[26] 28 U.S.C. § 1447(c).

[27] *Latiolais v. Huntington Ingalls, Incorporated,* 951 F.3d 286, 290 (5th Cir. 2020).

[28] *Neal v. Ameron Int'l Corp.,* No. 20-00172, 2020 WL 6153686, at *4 (M.D. La. Oct. 20, 2020), *citing Mesa v. California*, 489 U.S. 121, 126 (1989).

[29] *Willingham v. Morgan*, 395 U.S. 402, 406 (1969) (*quoting Tennessee v. Davis,* 100 U.S. 257, 263 (1879)).

within the scope of their authority "can be arrested and brought to trial in a State court, for an alleged offense against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection ... the operations of the general government may at any time be arrested at the will of one of its members."[30]

Because of its broad language and unique purpose, the federal officer removal statute has been interpreted to operate somewhat differently. Unlike the general removal statute, which must be "strictly construed in favor of remand,"[31] the federal officer removal statute's broad language must be liberally interpreted.[32]  Additionally, the Supreme Court has consistently urged courts to avoid "a narrow, grudging interpretation of § 1442(a)(1)."[33]  There is also no requirement in the federal officer removal statute that the district court have original jurisdiction over the plaintiff's claim. A case against a federal officer may be removed even if a federal question arises as a defense rather than as a claim apparent from the face of the plaintiff's well-pleaded complaint.[34] Thus, and according to the Fifth Circuit, federal officers may remove cases to federal court that ordinary federal question removal would not reach.[35]

### 2.  *Latiolais* and Its Progeny

A defendant removing under Section 1442(a)(1) must show (1) it has asserted a colorable federal defense, (2) it is a "person" within the meaning of the statute, (3) that has acted pursuant

---

[30] *Willingham,* 395 U.S. at 406, (*quoting Davis,* 100 U.S. at 263); *also citing Watson v. Philip Morris Companies, Inc.,* 551 U.S. 142, 148 (2007) ("As Senator Daniel Webster explained [in 1833], where state courts might prove hostile to federal law, and hence to those who enforced that law, the removal statute would 'give a chance to the [federal] officer to defend himself where the authority of the law was recognized.'" (*quoting* 9 Cong. Deb. 461 (1833)).

[31] *Dempster,* 435 F. Supp. 3d at 720, *citing Watson,* 551 U.S. at 147 and *Winters,* 149 F.3d at 398 ("Furthermore, this right is not to be frustrated by a grudgingly narrow inter
interpretation of the removal statute.") (other citations omitted).

[32] *Neal,* 2020 WL 6153686, at *4, *citing Watson*, 551 U.S. at 147-48; *Willingham*, 395 U.S. at 406.

[33] *Latiolais*, 951 F.3d at 290-91, *citing Willingham*, 395 U.S. at 407; *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981); *Jefferson County, Ala., v. Acker*, 527 U.S. 423, 431 (1999).

[34] *See Latiolais,* 951 F.3d at 290, *citing Mesa,* 489 U.S. at 136 ("As the Supreme Court has explained, 'the raising of a federal question in the officer's removal petition ... constitutes the federal law under which the action against the federal officer arises for Art. III purposes.'")

[35] *Latiolais*, 951 F.3d at 290.

to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions.[36] Before 2020, courts in the Fifth Circuit required a removing defendant to show "a causal nexus" between the defendant's acts under color of federal office and the plaintiff's claims.[37] In its unanimous, *en banc* decision in *Latiolais v. Huntington Ingalls, Inc.* ("*Latiolais*"), which involved a similar asbestos-exposure claim asserted against the Avondale Defendants,[38] the Fifth Circuit significantly expanded the law regarding federal officer removal. Now, instead of "a causal nexus," a defendant must only show that the charged conduct "is connected or associated with an act pursuant to a federal officer's directions" (if the other statutory requirements are met).[39] *Latiolais* effected a significant change in the prior law regarding the federal officer removal statute and overruled a line of cases that relied on the "causal nexus" between the defendant's acts performed under color of federal authority and the plaintiff's claims.[40] Importantly, prior to *Latiolais*, federal officer removal in the Fifth Circuit was limited to intentional tort or strict liability claims. Now at least some negligence claims are also removable.[41]

Post-*Latiolais*, this Court, and at least one other district court in the Circuit, have found federal officer removal proper under facts similar to those established here. Indeed, this division of this Court has already done so. In *Neal v. Ameron International Corp.*,[42] which also involved the Avondale Defendants, this Court held that removal was timely and proper under the federal

---

[36] *Latiolais,* 951 F.3d at 296.
[37] *Latiolais,* 951 F.3d at 291.
[38] *Latiolais,* 951 F.3d at 289-90.
[39] *Latiolais,* 951 F.3d at 296.
[40] *Jackson v. Avondale Industries Inc.*, 469 F. Supp. 3d 689, 702 (E.D. La. June 29, 2020), *citing Latiolais,* 951 F.3d at 291, 296, *overruling Bartel v. Alcoa S.S. Co.*, 805 F.3d 169 (5th Cir. 2015); *IntegraNet Physician Resources, Inc. v. Texas Independent Providers, L.L.C.*, 945 F.3d 232 (5th Cir. 2019); *Legendre v. Huntington Ingalls, Incorporated*, 885 F.3d 398 (5th Cir. 2018); *Zeringue v. Crane Company*, 846 F.3d 785 (5th Cir. 2017); and *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457 (5th Cir. 2016).
[41] *See, e.g., Latiolais,* 951 F.3d at 296.
[42] No. 20-172, 2020 WL 6153686 (M.D. La. Oct. 20, 2020).

officer removal statute.  In so holding, this Court reviewed much of the same evidence submitted

by the Avondale Defendants in this case.  There, it was determined that the Avondale Defendants

had asserted a colorable federal defense by showing that the federal government "approved

reasonably precise specifications" regarding the contractors work, the work conformed to the

government's specifications and that the government was aware of asbestos hazards associated

with the Avondale Defendants during the relevant time period.[43]  For the same reasons the

Avondale Defendants established the first prong of a colorable federal defense, the Court also

found that the Avondale Defendants' charged conduct was connected with acts under federal office

and pursuant to a federal officer's direction.[44]  As it regards connexity, the Court held:

> Plaintiff claims the Avondale Defendants failed to warn him about
> the dangers of asbestos and failed to take certain precautions to
> prevent his exposure to asbestos. Plaintiff's claims relate to the
> Avondale Defendants' actions under color of federal office,
> specifically, their construction of Lykes ships to the required federal
> specifications. Accordingly, Plaintiff's challenged conduct is
> connected with the acts under federal office, thus satisfying this final
> requirement for removal.[45]

Several cases from the Eastern District of Louisiana have also upheld the propriety of federal

officer removal under such facts: *Jackson v. Avondale Indus. Inc.,*[46] *Cortez v. Lamorak Ins. Co.,*[47]

---

[43] *Neal*, 2020 WL 6153686, at ** 5-7.

[44] *Neal*, 2020 WL 6153686, at *8.

[45] *Neal*, 2020 WL 6153686, at *9.  There was no dispute that the Avondale Defendants are "persons" within the meaning of the statute.  *Id.*, at *8.  Although this Court's opinion in *Borne v. ANCO Insulations*, Inc., No. 20-134, 2020 WL 6277307 (M.D. La. Sept. 18, 2020), *report and recommendation adopted,* No. 20-134, 2020 WL 6276955 (M.D. La. Oct. 26, 2020), was primarily related to whether removal was timely, the Court also found that the requirements of federal officer removal were met by the Avondale Defendants in that case.

[46] 469 F. Supp. 3d 689, 708 (E.D. La. June 29, 2020) (denying remand of Section 1442 removal of negligence claims by plaintiff exposed to asbestos while working at Avondale and plaintiff's father working at Avondale due to use of asbestos in materials required by the government to be used aboard U.S. Coast Guard Cutters and Lykes vessels; finding all four 1442 prongs for removal were met on consideration of similar evidence and finding removal timely).

[47] No. 20-2389, 2020 WL 6867250 (E.D. La. Nov. 23, 2020) (denying remand of Section 1442 removal of failure to warn and negligence claims by plaintiff exposed to asbestos when he rode the labor bus with Avondale employees exposed to asbestos in materials required by the government to be used aboard U.S. Coast Guard Cutters; finding all four 1442 prongs for removal were met on similar evidence and finding removal timely).

*Becnel v. Lamorak Ins. Co.,*[48] *Broussard v. Huntington Ingalls, Inc.,*[49] *Bourgeois v. Huntington Ingalls Inc.,*[50] and *e.g.*, *Boudreaux v. Bossier.*[51]

While it is not suggested that Plaintiffs' arguments in this case rise to the level of bad faith, they seem to disregard the sea change in the law brought about by *Latiolais* and make very thin efforts to adequately distinguish the growing line of cases that have upheld federal officer removal under similar facts. Many of the arguments asserted here by the Avondale Defendants have been found meritorious in this Court and the U.S. District Court for the Eastern District of Louisiana. Conversely, the arguments made by Plaintiffs have been rejected. As Defendants have established the elements of federal officer removal, it is recommended that this case be added to that line of cases upholding the propriety of federal officer removal post-*Latiolais*.

---

[48] No. 19-14536, 2020 WL 5587666 (E.D. La. Sept. 18, 2020) (denying remand of Section 1442 removal of failure to warn, negligence, and strict liability claims by plaintiff exposed to asbestos while working at Avondale due to use of asbestos in materials required by the government to be used aboard Lykes vessels; finding all four 1442 prongs for removal were met on consideration of similar evidence and finding removal timely).

[49] No. 20-836, 2020 WL 2744583 (E.D. La. May 27, 2020) (denying remand of Section 1442 removal of negligence claims by plaintiff exposed to asbestos from laundering husband's clothes during the time when husband worked at Avondale and was exposed to asbestos from materials required by the government to be used aboard naval vessels constructed to MARAD specifications; finding all four 1442 prongs for removal were met on consideration of similar evidence and finding removal timely).

[50] No. 20-1002, 2020 WL 2488026 (E.D. La. May 14, 2020) (denying remand of Section 1442 removal of negligence by plaintiff exposed to asbestos while delivering mail (but not working on a vessel) at Avondale due to use of asbestos in materials required by the government to be used aboard U.S. Navy destroyer escorts; finding all four 1442 prongs for removal were met on consideration of similar evidence (*see* R. Doc. 17 and attachments thereto of No. 20-1002 (ED. La.)) and finding removal timely).

[51] No. 19-12355, 2020 WL 1330014 (E.D. La. Mar. 23, 2020) (denying remand of Section 1442 removal of negligence claims by plaintiff exposed to asbestos while working at Avondale due to use of asbestos in materials required by the government to be used aboard the *USS Tappahannock*; finding all four 1442 prongs for removal were met on consideration of similar evidence (*see* R. Doc. 17 and attachments thereto of No. 19-12355 (E.D. La.)).

### C.    Federal Officer Removal Was Proper

#### 1.    The Avondale Defendants Have Raised Colorable Federal Defenses[52]

Plaintiffs argue that removal was improper under the federal officer removal statute because the Avondale Defendants have not asserted colorable federal defenses, and Defendants have not shown that their work on the Lykes vessels was at the direction of the government.[53]    In opposition, the Avondale Defendants contend that they have raised the following colorable federal defenses: Plaintiffs' claims are barred by government contractor immunity as established by *Boyle v. United Technologies Corp*,[54] and Plaintiffs' claims are barred by derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Construction Co.*[55]

To be "colorable," the asserted federal defense need not be "clearly sustainable," as Section 1442 does not require a federal official or person acting under him "to 'win his case before he can have it removed.'"[56] Instead, an asserted federal defense is colorable unless it is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous."[57] Certainly, if a defense is plausible, it is colorable.[58]   Further, "[t]he bar for what constitutes a 'colorable' defense is not high."[59]

---

[52] As the Avondale Defendants have established the propriety of federal officer removal, it is not necessary to evaluate the arguments asserted by Hopeman. *See Neal*, 2020 WL 6153686 at *9 ("Having concluded that the Avondale Defendants properly removed this action under the federal officer removal statute, the Court need not determine whether Hopeman has an independent basis for removal.").

[53] R. Doc. 21-1, pp. 3-8, 10-21. Plaintiffs also argue that the Longshore Harbor Workers' Compensation Act ("LHWCA") also fails to provide a colorable federal defense to the Avondale Defendants at R. Doc. 21-1, pp. 22-23; however, the Avondale Defendants have not asserted the LHWCA as a federal defense in this case. R. Doc. 32, pp. 32-33 *and see* R. Doc. 1, ¶¶ 20-22.

[54] 487 U.S. 500 (1988).

[55] 309 U.S. 18 (1940).

[56] *Latiolais*, 951 F.3d at 296–97, *citing Jefferson County*, 527 U.S. at 431 (*quoting Willingham*, 395 U.S. at 407).

[57] *Latiolais*, 951 F.3d at 297 (*quoting Zeringue*, 846 F.3d at 790) and *citing Bell v. Thornburg*, 743 F.3d 84, 89-91 (5th Cir. 2014) (deeming an asserted federal defense colorable because it satisfied the "causal connection" requirement).

[58] *Latiolais*, 951 F.3d at 297.

[59] *Jackson*, 469 F. Supp. 3d at 703, *citing Elie v. Ameron International Corporation*, No. 19-13924, 2020 WL 2554317, at *2 (E.D. La. May 20, 2020)

In *Neal*, this Court, upon considering substantially the same evidence and authority at issue here, including but not limited to a similar affidavit by Christopher P. Herfel ("Herfel Affidavit"), found that the Avondale Defendants raised colorable federal defenses.[60] The undersigned has also considered the arguments and evidence of the parties and finds that the government contractor defense constitutes a colorable defense in this action for the purposes of the federal officer removal statute for much the same reasons as set forth in *Neal*: 1) the evidence submitted shows that the federal government "approved reasonably precise specifications"[61] for the Lykes vessels at issue, including the requirement that Avondale use asbestos;[62] 2) the Avondale Defendants have demonstrated that Avondale's work conformed with the government's specifications and

---

[60] *Neal,* 2020 WL 6153686, at **5-6.

[61] *Boyle*, 487 U.S. at 512.

[62] R. Doc. 32, pp. 10-14, 23-26. Decedent worked at Avondale from July 11, 1967 until July 16, 1969 as a tacker and welder, and then from July 28, 1970 until June 20, 1972 as a welder. Pierre worked at Avondale from 1964 to 1977 as a shipfitter. Further, Granier testified that both Decedent and Pierre worked aboard cargo ships undergoing construction for the Lykes lines. R. Doc. 32-3, ¶¶ 14-15 and R. Doc. 1-2, pp. 11, 15-16, 24-25, 28-29 (Granier deposition testimony). In *Neal*, this Court found that the Lykes vessels that Avondale constructed for Lykes Brothers Steamship Company ("Lykes Brothers") were U.S. Maritime Administration ("MARAD") design cargo ships designed pursuant to contracts between Avondale, Lykes Brothers, and MARAD, the maritime agency of the United States. *Neal,* 2020 WL 6153686, at **5-6, 8, *and see* R. Doc. 32, p. 11, *citing* R. Doc. 32-8 (May 2019 Affidavit of Danny Joyce ("Joyce"), Industrial Hygienist at Avondale who has studied historical asbestos use onboard vessels), *and see* the contract at R. Doc. 25, pp. 1-9 (under seal). This Court credited the affidavits of Joyce in *Neal,* 2020 WL 6153686, at *6 (*and see* Joyce's affidavits at R. Doc. 31-4 and 31-9 of No. 20-172 (M.D. La. May 13, 2020), and the Eastern District also relied upon the affidavit of Joyce in *Jackson*, 469 F. Supp. 3d at 698. The specifications, which were approved by MARAD and incorporated into the contracts, all required the use of some asbestos materials, and particularly, "Johns-Manville Maritime 36 core," which contained 40% amosite asbestos through the Lykes living quarters, which is the material that Granier appears to have testified that Decedent and Pierre were exposed to during their employment at Avondale. *Neal*, 2020 WL 6153686, at *6, *citing Latiolais*, 951 F.3d at 297 ("Avondale submitted one affidavit and deposition testimony alleging that the Navy required installation of asbestos on the *Tappahannock*, as well as another affidavit alleging that the Navy generally required Avondale to install asbestos and to comply with certain related safety practices. These documents make colorable that the government approved reasonably precise specifications about the installation of asbestos."). In *Neal*, this Court considered and upheld the majority of the foregoing allegations by the Avondale Defendants; and like *Neal*, the undersigned finds the foregoing evidence is sufficient to sustain the Avondale Defendants' burden of establishing a colorable showing that the first *Boyle* factor is met.

regulations;[63] and 3) the Avondale Defendants have shown that "it is colorable that Avondale did not omit warning the government about any dangers about which the government did not know."[64]

While no conclusion is made at this point as to whether the Avondale Defendants will ultimately succeed on a colorable defense for the purposes of the federal officer removal statute, they have asserted entitlement to the defense that is "subject to reasonable debate."[65] Accordingly,

---

[63] *Boyle*, 487 U.S. at 512. Despite Plaintiffs' argument to the contrary, the Avondale Defendants presented evidence that Avondale complied with the safety requirements of the Walsh-Healey Act, the Occupational Health and Safety Act ("OSHA"), and the Louisiana Sanitary Code in its use of asbestos-containing products, including the affidavit of Joyce. R. Doc. 32, pp. 27-30, *citing* R. Doc. 32-13 (April 17, 2018 Joyce Affidavit). *See also* R. Doc. 32-14, pp. 6-7 (Joyce February 13, 1996 trial testimony). Joyce conducted a detailed review of the historical safety regulations governing Avondale's shipbuilding activities that were in effect from World War II to the present and found that "Avondale ... complied with governmental and industry rules and regulations relative to asbestos air quality." R. Doc. 32-13, ¶¶ 3, 6. The ultimate merits of the Avondale Defendants' defense are not addressed at this stage as that is not necessary to determine whether the defense is colorable. Accordingly, any genuine dispute of material fact with respect to the second *Boyle* factor is not appropriately decided at this stage of the litigation. *Laurent v. City of New Orleans*, No. 14-2022, 2014 WL 5410654, at *4 (E.D. La. Oct. 23, 2014) ("[A] motion to remand is not the proper mechanism by which to litigate a defendant's defense.").

[64] The testimony of Herfel, Joyce, and Richard Lemen ("Lemen"), submitted by the Avondale Defendants, is sufficient to establish a colorable showing of this factor because the federal government knew more than Avondale about the hazards of asbestos exposure. R. Doc. 32, pp. 31-32 *and see Neal,* 2020 WL 6153686, at *7, *citing Latiolais*, 951 F.3d at 298 ("Avondale's evidence tends to support that the federal government knew more than Avondale knew about asbestos-related hazards and related safety measures. From such evidence, it is colorable that Avondale did not omit warning the government about any dangers about which the government did not know."). *See also Boyle*, 487 U.S. at 512.

[65] *Crutchfield v. Sewerage and Water Board of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016). Plaintiffs' arguments contending that Defendants cannot prevail on the federal officer defense, including their challenges as to whether the government directed the use of asbestos aboard the Lykes vessels (*see* discussion *below* in the context of the third prong), whether Defendants complied with the government's safety measures, whether Defendants complied with the government's vessel construction requirements, and whether Defendants have shown that the government had more knowledge of the hazards of asbestos than Defendants (R. Doc. 21-1, pp. 3-8, 11-19, 20-21; R. Doc. 36 (Plaintiffs' Reply to Hopeman, *in globo*); R. Doc. 43 (Plaintiffs' Reply to the Avondale Defendants, *in globo*); R. Doc. 48 (Plaintiffs' Response to Sur-Reply, *in globo*) are all factual challenges to the evidence submitted, which will be determined on the merits and need not be resolved in order for this Court to determine if it has jurisdiction pursuant to Section 1442. *See id.:* "As Hill Brothers need prove for jurisdictional purposes only that its entitlement to the defense is subject to reasonable debate, *Winters,* 149 F.3d at 400, our review of the record supports the district court's conclusion that the federal officer removal statute applies. Indeed, whether the contractor defendants are entitled to the immunity is, according to Plaintiffs, one of the common questions in this case that make certification appropriate." *See also Willingham,* 395 U.S. at 409 ("Petitioners sufficiently put in issue the questions of official justification and immunity; the validity of their defenses should be determined in the federal courts.") and *Jefferson Cty., Ala. v. Acker,* 527 U.S. 423, 431 (1999) ("In construing the colorable federal defense requirement, we have rejected a 'narrow, grudging interpretation' of the statute, recognizing that 'one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.' 395 U.S., at 407. We therefore do not require the officer virtually to 'win his case before he can have it removed.' *Ibid.* Here, the judges argued, and the Eleventh Circuit held, that Jefferson County's tax falls on 'the performance of federal judicial duties in Jefferson County and 'risk[s] interfering with the operation of the federal judiciary' in violation of the intergovernmental tax immunity doctrine; that argument, although we ultimately reject it, see *infra,* at 2077–2081, presents a colorable federal defense.").

the Avondale Defendants have presented at least one colorable federal defense and the Court need

not consider whether any of their other asserted federal defenses are also colorable.

### 2. The Avondale Defendants Are "Persons" Within the Meaning of Section 1442(a)

Section 1442(a) includes both natural persons and corporations; therefore, the Avondale

Defendants are "persons" within the meaning of Section 1442(a), an issue that is not disputed by

Plaintiffs.[66]

### 3. The Avondale Defendants "Acted Under" a Federal Officer

Plaintiffs strenuously contest that the Lykes vessels were federal vessels; rather, they

contend that the vessels were built for private owners with a partial government subsidy.[67]

Plaintiffs further contend that the government did not require the use of asbestos on the Lykes

vessels; rather, it was the shipowner's agent, Gibbs & Cox, who designed the vessels and directed

the plans and specifications.[68] Plaintiffs argue that MARAD only served a limited role under the

parties' contract, which does not indicate that MARAD was to choose whether insulation or other

asbestos products were to be used.[69]  Plaintiffs contend that the only requirement by a federal

agency was that the Lykes vessels had to include specific "National Defense Features," but the

Avondale Defendants have not shown that those features involved asbestos.  Plaintiffs assert that,

to the extent Herfel's Affidavit alleges that the ship construction specifications for Lykes

vessels/C4 cargo ships (which were approved by MARAD and incorporated into the ship

construction contracts), "all required the use of at least some asbestos containing materials," the

specifications for the contract itself provided that Gibbs & Cox determined what would be used

---

[66] R. Doc. 32, p. 33 and R. Doc. 30, p. 24, *and see Neal,* 2020 WL 6153686, at *8, *citing Winters*, 149 F.3d at 398 (corporations are "persons" for removal pursuant to Section 1442).  *See also Savoie,* 817 F.3d at 461, (*citing Watson*, 551 U.S. at 151).

[67] R. Doc. 21-1, p. 3.

[68] R. Doc. 21-1, p. 4, *citing* R. Doc. 25-1, p. 6 (contract specifications under seal).

[69] R. Doc. 21-1, p. 4, *citing* R. Doc. 25-1, p. 8 (under seal).

on the vessels.[70]  Plaintiffs also argue that the specifications only provided for MARAD's review

of plans, not the approval of plans, and there is no indication that MARAD reviewed the

specifications of the plans involving the use of asbestos.[71] According to Plaintiffs, the fact that

Avondale had to comply with federal law (*e.g.*, the Marine Inspection and Navigation Laws in

Title 46) in building the Lykes vessels is not sufficient to give rise to federal officer removal

jurisdiction.[72]

Again, *Neal*, which also involved a claim of asbestos exposure aboard Lykes vessels at

Avondale in the 1960s is on point and applicable. After thoroughly considering substantially the

same evidence and authority, including Herfel's Affidavit,[73] this Court cogently held:

> For the reasons discussed above in support of the first prong of the
> *Boyle* test, the Court concludes that the Avondale Defendants have
> demonstrated they acted pursuant to a federal officer's direction. ….
> Based on Mr. Herfel's affidavit, it is apparent that the Lykes ships
> on which Plaintiff worked were subsidized by the federal
> government and were required to be built according to certain
> specifications, so that they could be used in a time of war. *Dempster
> v. Lamorak Insurance Co.*, 435 F. Supp. 3d 708, 725 (E.D. La.
> 2020). Given that the evidence presented establishes that had the
> Lykes ships that Plaintiff worked on not been built, the government
> would have had to build similar vessels to be used as Navy
> Auxiliaries during war, the Court finds that the facts in the record
> are sufficient to establish that Avondale was "acting under" federal
> direction. *See Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710,
> 713 (5th Cir. 2015); *Dempster*, 435 F. Supp. 3d at 725-26; *Jackson*,
> —— F.Supp.3d at —— – ——, 2020 WL 3510724, at *12-13.[74]

---

[70] R. Doc. 21-1, pp. 5-7; R. Doc. 43, pp. 2-3 (Reply); R. Doc. 48, pp. 3-5 (Response to Sur-Reply). Plaintiffs cite R. Doc. 21-9, ¶¶ 21-22 (sic, ¶ 19), Herfel's Affidavit from a different proceeding, also found herein at R. Doc. 32-3, ¶ 21.
[71] R. Doc. 21-1, p. 5.
[72] R. Doc. 21-1, pp. 7-8 *and see* Plaintiffs' Reply to Avondale's Opposition, which reiterates essentially all of the same arguments referenced above. R. Doc. 43, pp. 2-9.
[73] *See* No. 20-172 (M.D. La. May 13, 2020), R. Doc. 31 (Avondale Opposition) and R. Doc. 31-3 (Herfel Affidavit).
[74] *Neal*, 2020 WL 6153686, at *8.

### 4. Plaintiffs' Claims Are Related to the Avondale Defendants' Acts Pursuant to Federal Officers' Directions

The Avondale Defendants submit that Plaintiffs' claims relate to Avondale's actions under color of federal office because the alleged negligence is connected to Avondale's construction of Lykes vessels.[75] In *Latiolais*, the Fifth Circuit found this requirement was satisfied because the defendant allegedly failed to warn the plaintiff of, or protect the plaintiff from, the dangers of asbestos—negligent acts that were "connected with the installation of asbestos during the refurbishment" of a vessel allegedly performed "pursuant to directions of the U.S. Navy."[76] Similarly, the "connection" condition of removal is satisfied in this action. Plaintiffs claim that the Avondale Defendants failed to warn Decedent and Pierre about the dangers of asbestos and failed to take certain precautions to prevent their exposure to asbestos. Plaintiffs' claims relate to the Avondale Defendants' actions under color of federal office, specifically, the construction of Lykes vessels, including a joiner subcontract calling for the installation of wallboard on Lykes vessels, to the required federal specifications, which included the use of asbestos-containing material. Accordingly, Plaintiffs' challenged conduct is connected with acts under federal office, thus satisfying this final requirement for removal. The Court therefore has jurisdiction over this matter pursuant to the federal officer removal statute.[77]

### D. The Removal Was Timely

Having determined that federal officer removal jurisdiction exists, the remaining issue is whether the removal was procedurally proper, *i.e.*, timely. As the Avondale Defendants' possession, and the subsequent production, of Pierre's employment file did not trigger the removal clock, their removal of this matter was timely.

---

[75] R. Doc. 32, p. 36.
[76] *Latiolais,* 951 F.3d at 296.
[77] *See Neal,* 2020 WL 6153686, at *9, *citing Jackson*, 469 F. Supp. 3d at 708.

The time limits for filing a notice of removal, provided in the removal procedure rules of 28 U.S.C. § 1446(b),[78] are as follows:

> (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
> ...
> (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

The Fifth Circuit has provided a bright line rule that "the thirty-day removal period under the first paragraph is triggered only where the initial pleading 'affirmatively reveals on its face" that jurisdiction exists.[79]   If a plaintiff wants the 30-day period to run from the defendant's receipt of the initial pleading, a plaintiff must affirmatively state in that initial pleading the grounds for federal jurisdiction.[80]   With regard to triggering the 30-day time period from the defendant's receipt "of an amended pleading, motion, order, or other paper," as provided in Section 1446(b)(3), the Fifth Circuit has provided that the 30-day removal period is triggered only where jurisdiction is "unequivocally clear and certain" from the document.[81]   Courts have found that the standard for triggering removal based upon an "amended pleading, motion, order, or other paper" as

---

[78] *See Morgan v. Huntington Ingalls, Inc.,* 879 F.3d 602, 607 (5th Cir. 2018) (applying Section 1446(b)(1) and (b)(3) to a Section 1442 removal to determine the timeliness of removal).

[79] *Scott v. Office Depot, Inc.,* No. 14-791, 2015 WL 2137458, at *4 (M.D. La. May 7, 2015), *citing Mumfrey v. CVS Pharmacy, Inc.,* 719 F.3d 392, 399 (5th Cir. 2013) (*quoting Chapman v. Powermatic, Inc.,* 969 F.2d 160, 163 (5th Cir. 1992)).

[80] *Chapman,* 969 F.2d at 163.

[81] *See Scott,* 2015 WL 2137458, at *4, *citing Bosky v. Kroger Texas, LP,* 288 F.3d 208, 211 (5th Cir. 2002) (stating that the statutory term "ascertained" means "unequivocally clear and certain").

provided in Section 1446(b)(3) is at least as strict as the standard for triggering the 30-day period for removal based on an initial pleading, as provided in Section 1446(b)(1).[82]

Plaintiffs argue that the June 25, 2020 removal of the June 28, 2019 state court Petition was untimely because the Avondale Defendants' stated basis for removal, *i.e.*, Decedent's exposure to asbestos through Avondale's construction of Lykes vessels, was known to the Avondale Defendants before the case commenced. Specifically, Plaintiffs state that they requested Pierre's employment file on January 17, 2019 (and later produced it to all parties on October 16, 2019), and those records reflected that Pierre worked on Lykes vessels in the engine room. Further, Plaintiffs' June 28, 2019 Petition asserted that Decedent was exposed to asbestos on a daily basis through the work of Pierre. Thus, according to Plaintiffs, the combination of the pre-suit production of Pierre's employment file and the filing of the Petition put the Avondale Defendants on notice that Pierre worked on Lykes vessels and that Decedent was exposed to asbestos through Pierre's work, such that the removal clock started ticking immediately upon the filing of the Petition and had long expired by the time the Avondale Defendants removed on June 25, 2020.[83]

---

[82] *See Scott,* 2015 WL 2137458, at *4, n. 2 ("In *Bosky,* the court indicated that the standard to trigger the second 30 day removal period (as is at issue in the instant case) 'seems to require a *greater* level of certainty' than the *Chapman* standard used to determine whether a case must be removed based on the allegations contained in the initial pleading. *Id.* at 211 (emphasis added). The Fifth Circuit has subsequently held that *Bosky's* discussion of the standards for triggering the initial 30-day removal period constituted dicta because the issue before the *Bosky* court was whether removal was timely pursuant to the language of what is now § 1446(b)(3), and not whether removal was timely pursuant to the language of what is now § 1446(b)(1). *See Mumfrey,* 719 F.3d at 399 n. 11 (*citing Bosky,* 288 F.3d at 209–11). The *Mumfrey* court criticized the *Bosky* decision to the extent it stated that the bright line rule announced in *Chapman* was less strict than the requirement for triggering the 30-day period with regard to amended pleadings and other documents. *Id.* at 400. While the *Mumfrey* court does not use the 'unequivocally clear and certain' language found in *Bosky,* its ultimate holding that the 30-day removal period was triggered by receipt of an amended petition seeking $3,575,000 in damages and not the initial petition, which did not specifically request any amount of damages, suggests that the standards for triggering the 30-day period are virtually identical (if not in fact identical) if removal is based upon the initial pleading or a subsequent paper. *See Smith v. Wal–Mart Louisiana, LLC,* No. 13–2368, 2013 WL 4781778, at *3 (W.D. La. Sept. 5, 2013) (*Bosky* should be read as imposing a trigger for the second removal period that is *at least* as strict as that set forth in *Chapman.*).").

[83] R. Doc. 21-1, pp. 1-2, *citing* one record from Pierre's Avondale employment file at R. Doc. 21-4.

The Petition did not affirmatively reveal on its face that Decedent's or Pierre's exposure to asbestos at Avondale, including via products distributed, or installations conducted, by Hopeman was in connection with work conducted by Decedent or Pierre on or around vessels or other projects constructed for the federal government as required for removal jurisdiction to arise under the federal officer removal statute; therefore, the removal clock was not triggered by the service of the Petition pursuant to Section 1446(b)(1). Avondale's pre-suit possession of Decedent's and Pierre's employment files cannot be used to make an end-run around the requirement that *the Petition* must affirmatively reveal on its face that jurisdiction existed justifying removal. As the Avondale Defendants point out, the Fifth Circuit has held that, for the purposes of the first paragraph of Section 1446(b), the thirty day time period in which a defendant must remove a case starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face that the case is removable. The Fifth Circuit has declined to hold that a defendant's subjective information of knowledge received prior to the initial pleading starts the removal clock because that would "needlessly inject uncertainty into a court's inquiry as to whether a defendant has timely removed a case, and as a result would require courts to expend needlessly their resources trying to determine what the defendant knew at the time it received the initial pleading and what the defendant would have known had it exercised due diligence."[84] Rather, the *Chapman* court held: "We believe the better policy is to focus the parties' and the court's attention on what the initial pleading sets forth…."[85] In this case, while the Petition alleges that Decedent and his father worked for Avondale, were exposed to asbestos, and contracted

---

[84] *Chapman,* 969 F.2d at 163. *See also Mumfrey,* 719 F.3d at 399 (rejecting the argument that the Section 1446(b)(1) removal clock was triggered by the petition's demand for lost wages, based on the plaintiff's contention that the defendant knew the amount of the plaintiff's salary). While both *Chapman* and *Mumfrey* considered the timeliness issue in connection with the amount in controversy in a removal wherein jurisdiction was premised on Section 1332, the timing rules of Section 1446 apply to both types of removals and therefore the same logic also applies.
[85] *Chapman,* 969 F.2d at 163.

mesothelioma, the Petition does not tie their exposure to where they worked or what they worked on at Avondale, including whether such work was pursuant to a federal contract.[86]

Likewise, the Section 1446(b)(3) removal clock was also not triggered by the production of Pierre's file in October 2019 because the lone notation from Pierre's file (which is very difficult to decipher), only appears to reference "Lykes" in connection with a facial injury Pierre sustained on January 28, 1965.[87]  It is silent regarding any asbestos exposure to Pierre while on the Lykes vessel; therefore, that record is not clear and unequivocally certain evidence that Pierre was exposed to asbestos while on a Lykes vessel during his employment with Avondale.[88]

Further, regardless of what Avondale knew based upon its possession of Decedent's and Pierre's employment records, the Avondale Defendants could not have removed this case prior to the *Latiolais* decision.  As explained by this Court at least twice now, had the Avondale Defendants removed at the times urged by Plaintiffs, they would have been required to show a casual nexus between Plaintiffs' negligence claims and Defendants' actions, which likely would have been futile because, pre-*Latiolais*, "courts continued to require that "the casual nexus element in [asbestos-exposure] cases is met when a plaintiff seeks to recover from a government contractor on a theory of strict liability but is absent when the theory of recovery is restricted to negligence."[89]

---

[86] *Cf. Parfait v. Huntington Ingalls Inc.,* No. 19-11958, 2019 WL 4297912, at *8 (E.D. La. Sept. 11, 2019) (holding that the plaintiff's express allegation "that he was exposed to asbestos while aboard destroyer escorts [in Avondale's Main Yard] from 1968 to 1978, which the defendants concede spans a time during which the Navy allowed the use of asbestos," triggered § 1446(b)(1)'s removal clock because destroyer escorts "are indisputably federal vessels").

[87] R. Doc. 21-4.

[88] *See Latiolais,* 951 F.3d at 289, 296 (upholding removal pursuant to the federal officer removal statute on facts alleging Avondale's negligence in exposing the decedent to asbestos while he worked aboard the *USS Tappahannock* when Avondale was under the direction of the U.S. Navy to refurbish the ship, which included the installation of asbestos). Plaintiffs' arguments regarding the Lykes vessels are contradictory. In arguing against the timeliness of removal, Plaintiffs assert that the employment record's reference to Pierre's work on a "Lykes" vessel established Pierre's exposure sufficient to trigger removal under the federal officer removal statute, which necessarily implies that a Lykes vessel is a federal vessel. R. Doc. 21-1, pp. 1-2. However, Plaintiffs then argue that Lykes vessels "were not government or federal vessels" sufficient to establish that the matter was properly removed pursuant to the same statute.  R. Doc. 21-1, p. 3.

[89] *See Martin v. et al. v. Air Products and Chemical Inc., et al.,* No. 20-168 (M.D. La. June 22, 2020), R. Doc. 42, pp. 7-8, *report and recommendation adopted*, No. 20-168 (M.D. La. July 7, 2020), R. Doc. 51, *and see Borne,* 2020 WL

Therefore, this case was not removable by Avondale at the times urged by Plaintiffs, both of which pre-date *Latiolais*.[90]

## III.    Recommendation

As the requirements of federal officer removal are met and the removal was timely,

**IT IS RECOMMENDED** that the Motion to Remand,[91] filed by Plaintiffs Joanne Clement Reulet, Leslie Reulet Carrere, and Evan J. Reulet, be **DENIED**.

In the event this Report and Recommendation is adopted, **IT IS FURTHER RECOMMENDED** that the matter be referred for a scheduling conference.

Signed in Baton Rouge, Louisiana, on March 4, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

6277307, at *5 ("This action, which asserts only negligence allegations against the Avondale Defendants, was not removable under the now overruled "causal nexus" jurisprudence controlling in the Fifth Circuit prior to the *Latiolais* decision.")

[90] Granier's testimony established Decedent's and Pierre's work aboard the Lykes vessels, upon which asbestos-containing products were present.  Granier was deposed on June 23, 2020.  The deposition transcript was received on June 24, 2020 and this matter was timely removed on June 25, 2020. Plaintiffs do not dispute that Decedent and Pierre worked aboard Lykes vessels; rather, Plaintiffs argue that the Lykes vessels were not federal vessels and the use of asbestos was not mandated by the federal government on the Lykes vessels.  R. Doc. 21-1, pp. 4-8. As discussed, above, in the context of the required elements for federal officer removal jurisdiction, other courts have rejected Plaintiffs' arguments and/or they fail for the reasons explained.

[91] R. Doc. 21.