UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**JOANNE CLEMENT REULET, ET AL.**   CIVIL ACTION NO.

**VERSUS**   20-404-BAJ-EWD

**LAMORAK INSURANCE COMPANY, ET AL.**

### RULING AND ORDER

Before the Court is the Motion to Compel Complete Responses to Discovery Requests ("Motion"),[1] filed by Defendant Louisiana Insurance Guaranty Association ("LIGA"). A telephone conference was conducted with the parties regarding the Motion and further argument is not necessary.[2] The Motion will be denied. Plaintiffs do not have information responsive to LIGA's request for a listing of health insurance payment information and LIGA's requests for settlement amounts and settlement documents is premature.

**I.   BACKGROUND**

Plaintiffs originally asserted direct action claims against Defendant Lamorak Insurance Company ("Lamorak") as the insurer of alleged tortfeasor co-Defendants Eagle Inc. and McCarty Corporation.[3] However, on March 11, 2021, Bedivere Insurance Company, a corporation into which Lamorak had merged, was declared insolvent and placed in liquidation.[4] As a result of the liquidation, Plaintiffs named LIGA as the statutory obligor for the policies issued by Lamorak to Eagle and McCarty.[5]

---

[1] R. Doc. 181.
[2] R. Doc. 192.
[3] R. Doc. 1-1, ¶¶ 2, 6-7. *See* R. Doc. 57 for the factual background of this proceeding.
[4] R. Doc. 181-1, p. 3, R. Doc. 181-2 and R. Doc. 65.
[5] LIGA was named as a defendant in Plaintiffs' Second Supplemental and Amending Complaint, which was filed on September 16, 2021. R. Doc. 95 and *see* ¶¶ 6-7. *See* R. Doc. 181-1, p. 3 and La. R.S. §22:2052, *et seq*. Plaintiffs

LIGA is a creation of the Louisiana Legislature, formed to administer certain claims arising out of the insolvency of insurance companies. According to LIGA, it "is not obligated to pay all claims that could have been brought against an insolvent insurer, but rather is only authorized by law to pay 'covered claims' as defined by the statute."[6] LIGA argues that it propounded discovery to Plaintiffs to obtain information "to allow LIGA to evaluate its obligations and defenses as set forth in the LIGA law," and particularly, LIGA's entitlement to statutory credits discussed below (although LIGA is not currently claiming any credits).[7] Dissatisfied with Plaintiffs' discovery objections and responses, LIGA filed the instant Motion seeking an order requiring Plaintiffs to provide the information sought by Interrogatories 5 and 7 and Request for Production ("RFP") No. 4.[8] Plaintiffs disagree with LIGA's interpretation of the applicable law and challenge production of the information requested.[9] The parties discussed the Motion at a January 7, 2022 telephone conference. The Motion was taken under advisement due to requests for additional briefing.[10] Following the conference, Defendant C.F. Industries filed an opposition memorandum, LIGA filed a reply memorandum, and Plaintiffs filed several notices of supplemental authority.[11]

II. LAW AND ANALYSIS

A. Applicable Legal Standards

Under the Federal Rules of Civil Procedure, parties may obtain discovery regarding any nonprivileged matter that is relevant to a claim or defense[12] and proportional to the needs of the

---

contend that Lamorak policies issued to the Avondale executive officers are also at issue, as well as those issued by Houston General Insurance Company to Eagle. R. Doc. 187, p. 9.
[6] R. Doc. 181-1, p. 3, citing La. R.S. § 22:2058A(1).
[7] R. Doc. 181-1, pp. 2-3 and R. Doc. 181-6.
[8] R. Doc. 181-1, p. 8.
[9] R. Doc. 187.
[10] R. Doc. 192.
[11] R. Docs. 194-196, 199, 201, 210.
[12] *Crosby v. Louisiana Health Service and Indem. Co.,* 647 F.3d 258, 262 (5th Cir. 2011) ("Generally, the scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'"), citing Fed. R. Civ. P. 26(b)(1) and *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir. 1982).

2

case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[13]  A court must additionally limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."[14] Furthermore, "[i]t is well settled law that magistrate judges are afforded broad discretion in ruling on discovery matters."[15]

### B. The Motion Will Be Denied as to Interrogatory No. 5 because Plaintiffs Do Not Possess the List that LIGA Seeks to Compel[16]

LIGA generally contends that the applicable law obligates Plaintiffs to exhaust all other insurance coverage before recovering from LIGA, which includes the obligation to exhaust coverage from policies issued to all joint tortfeasors, not just policies issued to Eagle and McCarty.[17] Furthermore, LIGA claims that is it entitled to a full credit for "any applicable limits stated in other insurance policies, as well as other amounts recovered by plaintiffs from any source, including but not limited to, settlements, Medicaid and Medicare payments, and other health insurance payments. The credit that is obtained reduces the amount that is potentially owed by

---

[13] Fed. R. Civ. P. 26(b)(1).
[14] Fed. R. Civ. P. 26(b)(2)(C).
[15] *Albemarle Corp. v. Chemtura Corp.,* No. 05-1239, 2008 WL 11351528, at *1 (M.D. La. Apr. 22, 2008), citing *Merritt v. International Bro. of Boilermakers*, 649 F.2d 1013 (5th Cir. 1981).
[16] The parties' briefs address a number of substantive legal issues that are not germane to the resolution of the instant Motion and therefore will not be addressed. *See, e.g.,* Plaintiffs' opposition memorandum pp. 18-25 and LIGA's reply memorandum at R. Doc. 199, pp. 10-14.
[17] R. Doc. 181-1, p. 4, citing La. R.S. § 22:2062(A)(1) and (A)(4).

3

LIGA…" pursuant to La. R.S. § 22:2062(A)(2).[18] To that end, Interrogatory No. 5 seeks a list that states how much was paid by each health and accident insurance provider identified by Plaintiffs for any injury, loss and damage alleged in the Complaint.[19] LIGA argues that this request is relevant to the potential credit it is allowed for "other insurance," as referred to in La. R.S. § 22:2062(A)(2), and the potential credit it is allowed for Medicare payments.[20] According to LIGA, Plaintiffs' response, which referred LIGA to the medical records produced, is insufficient, as LIGA's review of the records may yield a different calculation than Plaintiffs' calculation of the amounts paid.[21]

Plaintiffs disagree with LIGA's interpretation of applicable law in several respects, including LIGA's assertion that it is entitled to a credit for health insurance payments pursuant to La. R.S. § 22:2062(A)(2). Plaintiffs contend that subsection (A)(2) does not apply; rather, Plaintiffs argue that La. R.S. § 22:2062(A)(6)[22] applies to limit LIGA to credits for amounts paid

---

[18] R. Doc. 181-1, p. 4, citing La. R.S. § 22:2062(A)(2), which provides: "Any amount payable on a covered claim under this Part shall be reduced by the full applicable limits stated in the other insurance policy, or by the amount of the recovery under the other insurance policy as provided herein. The association and the insured shall receive a full credit for the stated limits, unless the claimant demonstrates that the claimant used reasonable efforts to exhaust all coverage and limits applicable under the other insurance policy. If the claimant demonstrates that the claimant used reasonable efforts to exhaust all coverage and limits applicable under the other insurance policy, or if there are no applicable stated limits under the policy, the association and the insured shall receive a full credit for the total recovery. (a) The credit shall be deducted from the lesser of the following: (i) The association's covered claim limit. (ii) The amount of the judgment or settlement of the claim. (b) In no case, however, shall the obligation of the association exceed the covered claim limit of this Part."

[19] R. Doc. 181-1, p. 8 and R. Doc. 181-5, p. 5: "For the health and accident insurance policies identified in your answer to Interrogatory No. 3, please provide a list stating how much was paid by each health and accident insurance provider for any injury, loss, and damage alleged in the Petition." LIGA clarifies that it does not seek the total amount of medical expenses billed.

[20] R. Doc. 181-1, pp. 8-9, citing *Brown v. Norma-Fuegero*, 2014-0826 (La. App. 4 Cir. 4/22/15), 165 So. 3d 1059.

[21] R. Doc. 181-1, pp. 8-9 and *see* Plaintiffs' responses and objections to Interrogatory No. 5 at R. Doc. 181-7, pp. 6-7 and R. Doc. 181-8, p. 2 (supplemental response).

[22] "In the case of a claimant alleging personal injury or death caused by exposure to asbestos fibers or other claim resulting from exposure to, release of, or contamination from any environmental pollutant or contaminant, any and all other insurance available to the insured for the claim for all policy periods for which insurance is available must first be exhausted before recovering from the association, even if an insolvent insurer provided the only coverage for one or more policy periods of the alleged exposure. Only after exhaustion of all solvent insurer's total policy aggregate limits for any alleged exposure periods will the association be obligated to provide a defense and indemnification within the obligations of this Part, subject to a credit for the total amount thereof, whether or not the total amount has actually been paid or recovered."

4

by other insurers of Eagle, McCarty, and the Avondale executive officers.[23] Thus, Plaintiffs contend that the health insurance payment information LIGA seeks is irrelevant. Plaintiffs argue that LIGA's authority, *i.e.*, *Brown v. Norma-Fuegero*, deals with Medicaid payments, for which all parties get a credit and which is treated differently than health insurance.[24] Further, Plaintiffs assert that they do not have a list that shows how much was paid by health and accident insurance providers and do not otherwise know this amount.[25] Plaintiffs contend that they have already provided the only information they have, *i.e.*, Mr. Reulet's medical bills, pursuant to Fed. R. Civ. P. 33(d).[26] Plaintiffs have also provided LIGA with signed medical authorizations so that LIGA can obtain Mr. Reulet's medical records directly. Plaintiffs argue that they are not required to sift through the records and calculate a total; rather, that is LIGA's burden, as LIGA seeks to assert entitlement to a credit for the amounts paid as an affirmative defense.[27]

In reply, LIGA reiterates that it is entitled to a credit for health insurance payments, and requires a calculation from Plaintiffs "so that LIGA will know whether Plaintiffs contest the amount that LIGA calculates to discern if the amount is something that has to be litigated at trial or can resolved before trial."[28] Further, LIGA contends that *Brown* is persuasive because the *Brown* court held that the Medicaid payments were subject to a LIGA credit and "Medicare is no different than Medicaid."[29]

---

[23] R. Doc. 187, pp. 3-4. LIGA does not address its purported obligations to the Avondale executive officers.
[24] R. Doc. 187, p. 4 distinguishing *Brown*.
[25] R. Doc. 187, pp. 2-3.
[26] R. Doc. 187, pp. 1-2. *See* Plaintiffs' responses and objections to Interrogatory No. 5 at R. Doc. 181-7, pp. 6-7 and R. Doc. 181-8, p. 2 (supplemental response).
[27] R. Doc. 187, pp. 1-4.
[28] R. Doc. 199, p. 6. LIGA asserts that, to the extent Plaintiffs contest the form of the request, *i.e.*, interrogatory versus a request for production, LIGA is willing to serve a request for production for the information but avers that Plaintiffs will continue to object to producing the information sought. R. Doc. 199, p. 6.
[29] R. Doc. 199, p. 7. LIGA also contends that the Court should not consider Plaintiffs' argument that LIGA law conflicts with federal Medicare law (*see* R. Doc. 199, pp. 6-7); however, Plaintiffs have not asserted that argument herein.

by other insurers of Eagle, McCarty, and the Avondale executive officers.[23] Thus, Plaintiffs contend that the health insurance payment information LIGA seeks is irrelevant. Plaintiffs argue that LIGA's authority, *i.e.*, *Brown v. Norma-Fuegero*, deals with Medicaid payments, for which all parties get a credit and which is treated differently than health insurance.[24] Further, Plaintiffs assert that they do not have a list that shows how much was paid by health and accident insurance providers and do not otherwise know this amount.[25] Plaintiffs contend that they have already provided the only information they have, *i.e.*, Mr. Reulet's medical bills, pursuant to Fed. R. Civ. P. 33(d).[26] Plaintiffs have also provided LIGA with signed medical authorizations so that LIGA can obtain Mr. Reulet's medical records directly. Plaintiffs argue that they are not required to sift through the records and calculate a total; rather, that is LIGA's burden, as LIGA seeks to assert entitlement to a credit for the amounts paid as an affirmative defense.[27]

In reply, LIGA reiterates that it is entitled to a credit for health insurance payments, and requires a calculation from Plaintiffs "so that LIGA will know whether Plaintiffs contest the amount that LIGA calculates to discern if the amount is something that has to be litigated at trial or can resolved before trial."[28] Further, LIGA contends that *Brown* is persuasive because the *Brown* court held that the Medicaid payments were subject to a LIGA credit and "Medicare is no different than Medicaid."[29]

---

[23] R. Doc. 187, pp. 3-4. LIGA does not address its purported obligations to the Avondale executive officers.
[24] R. Doc. 187, p. 4 distinguishing *Brown*.
[25] R. Doc. 187, pp. 2-3.
[26] R. Doc. 187, pp. 1-2. *See* Plaintiffs' responses and objections to Interrogatory No. 5 at R. Doc. 181-7, pp. 6-7 and R. Doc. 181-8, p. 2 (supplemental response).
[27] R. Doc. 187, pp. 1-4.
[28] R. Doc. 199, p. 6. LIGA asserts that, to the extent Plaintiffs contest the form of the request, *i.e.*, interrogatory versus a request for production, LIGA is willing to serve a request for production for the information but avers that Plaintiffs will continue to object to producing the information sought. R. Doc. 199, p. 6.
[29] R. Doc. 199, p. 7. LIGA also contends that the Court should not consider Plaintiffs' argument that LIGA law conflicts with federal Medicare law (*see* R. Doc. 199, pp. 6-7); however, Plaintiffs have not asserted that argument herein.

Setting aside the prematurity of LIGA's requests (addressed below) and the issue of which subsection of La. R.S. § 22:2062 applies, a party is not required to produce information that is not in its custody, possession, or control.[30] Plaintiffs represented in brief and during the telephone conference that they do not need a list of the amount of medical payments paid by each insurer; that they do have such a list; and that they have already produced the relevant information they possess, *i.e.*, the medical bills and records of the deceased.[31] LIGA does not dispute Plaintiffs' contention that they do not have the requested list; rather, LIGA seeks to compel Plaintiffs to create one so that LIGA has a calculation computed by Plaintiffs, primarily to evaluate a potential settlement.[32] However, Plaintiffs are not required to create a list or a calculation. If LIGA desires a total of the amounts paid by the health insurers, it can evaluate the bills and records and make its own calculation. Notably, in *Becnel v. Lamorak Insurance Company*, another asbestos exposure case involving the same counsel, that court denied LIGA's nearly identical Motion to Compel seeking the same insurer payment information, finding:

> Denied. Given that they do not readily possess responsive information, Plaintiffs are not required to comb through voluminous medical records already in the possession of Defendants to ascertain what amounts were actually paid by various insurance providers. If Defendants wish to ascertain that information, they can do that work themselves.[33]

The undersigned agrees. Accordingly, LIGA's Motion will be denied as to the information sought by Request for Production No. 5.[34]

---

[30] *See* Fed. R. Civ. P. 34 and *S. Filter Media, LLC v. Halter,* No. 13-116, 2014 WL 4278788, at *5 (M.D. La. Aug. 29, 2014) ("Rule 34 requires that a responding party produce responsive documents that are within their 'possession, custody or control.'").
[31] R. Doc. 187, pp. 1-3.
[32] R. Doc. 181-1, p. 9 and R. Doc. 199, p. 6.
[33] Plaintiffs' Notice of Supplemental Authority at R. Doc. 196, p. 1, quoting R. Doc. 196-1, *Becnel v. Lamorak Insurance Company*, No. 19-14536, (E.D. La. Jan. 13, 2022) at R. Doc. 233.
[34] To the extent that LIGA references a suggestion discussed during the conference to resolve this request, to which Plaintiffs objected (i.e., authorizations executed by Plaintiffs directed to Mr. Reulet's insurers for the release of

**C. The Motion Will Be Denied as to Interrogatory No. 7 and RFP No. 4 because Settlement Information is Prematurely Sought**

Interrogatory No. 7 seeks a list stating the amounts each person paid in settlement for the survival and wrongful death claims asserted in this case, and RFP No. 4 requests production of the associated settlement agreements.[35] LIGA argues that amounts paid in settlement are relevant because they are potentially the subject of a statutory credit pursuant to La. R.S. § 22:2062(A)(2).[36] According to LIGA, Plaintiffs' objection to production of the information on the basis that La. R.S. § 22:2062(A)(2) does not apply to asbestos cases is mis-founded, and contends that two decisions of the U.S. District Court for the Eastern District of Louisiana in other asbestos exposure cases, *Cortez v. Lamorak Ins. Co.* and *Dempster v. Lamorak Ins. Co.*, have previously rejected Plaintiffs' argument that La. R.S. § 22:2062(A)(6) applies to the exclusion of La. R.S. § 22:2062(A)(2).[37]

Plaintiffs generally argue that while the fact of settlement, and the identity of the parties to a settlement are subject to disclosure, the specifics of settlements are not discoverable.[38] Plaintiffs' settlement with Defendant CF Industries contains a confidentiality clause, and Plaintiffs contend that disclosure of settlement amounts to LIGA would have a chilling effect on future settlements

---

documents showing the amounts paid), Plaintiffs will not be ordered to provide such releases at this time because the issue of LIGA's potential credits is premature, as discussed below. The parties are encouraged to explore this resolution again as necessary once the issue of credits becomes ripe.

[35] R. Doc. 181-1, p. 9 and R. Doc. 181-5, p. 5: "For each settlement identified in your answer to Interrogatory No. 6, please provide a list stating the amount each person paid in settlement for the survival claim and wrongful death claim," and R. Doc. 181-5, p. 6: "Please produce all settlement agreements identified in your answer to Interrogatory No. 6."

[36] R. Doc. 181-1, pp. 9-10, citing *Williams v. USAgencies Cas. Ins. Co.*, 18-52071, (La. App. 1 Cir. 9/26/18); 256 So. 3d 1127, 1137 and *see* Plaintiffs' responses and objections at R. Doc. 181-7, pp. 7-8, 11-12.

[37] R. Doc. 181-1, pp. 5-7, citing *Cortez v. Lamorak Ins. Co.,* No. 20-2389 (E.D. La. Oct. 28, 2021), R. Doc. 307, and *Dempster v. Lamorak Ins. Co.*, No. 20-95 (E.D. La. Oct. 28, 2021), R. Doc. 355, both attached to LIGA's Motion at R. Docs. 181-3 and 181-4.

[38] *See* Plaintiffs' responses and objections to these requests at R. Doc. 181-7, pp. 7-8, 11-12. *See also* R. Doc. 187, pp. 5-7, citing, *e.g.*, *Allison v. Goodyear Tire & Rubber Co.*, No. MDL-875, No. 07–69104, 2010 WL 3384723 (E.D. Pa. August 19, 2010) (MDL for asbestos cases) and *Davis v. Johns-Manville Products*, No. 77–2282, *et seq.*, 1990 WL 162844 (E.D. La. October 16, 1990).

and are generally protected from disclosure by Fed. R. Evid. 408.[39]  C.F. Industries, now dismissed, adopts this argument in opposition to disclosure.[40]

As to the *Cortez* and *Dempster* decisions upon which LIGA relies, Plaintiffs contend those do not hold that settlement agreements are discoverable. Rather, according to Plaintiffs, both decisions pertained to the issue of whether Eagle could file a supplemental answer to assert the same affirmative defense in each of those cases (*i.e.*, that LIGA credits had become available to it due to the post-suit liquidation of Bedivere and Lamorak).  Plaintiffs point out that the ruling in *Dempster*, holding that LIGA was entitled to credits, was subsequently reversed, based on a finding that credits to LIGA only become an issue "if Movants are cast in judgment and plaintiffs attempt to collect against the Association," at which point the issue of credits can be litigated.[41]  Further, Plaintiffs contend that Eagle's motion to re-open discovery on the issue of credits was also denied, and the discovery LIGA seeks to conduct in this case was not permitted.[42]  Plaintiffs argue that the settlement documents and amounts need not be addressed at this time because the issue of whether LIGA can take a credit for them in not ripe until LIGA or Lamorak is cast in judgment, which may never occur.  Plaintiffs suggest that the interest of all parties is best protected by taking up this

---

[39] R. Doc. 187, pp. 5-6.  F.R.E. 408(a) provides: "Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction: (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority."
[40] R. Doc. 195, pp. 1, 3-4 and *see* R. Doc. 204.
[41] R. Doc. 187, p. 7, citing *Dempster v. Huntington Ingalls, Inc.*, No. 20-95 (E.D. La. Dec. 14, 2021), R. Doc. 373, at R. Doc. 187-1 herein (also attached to LIGA's Motion at R. Doc. 181-5, p. 34).  Plaintiffs argue that LIGA misrepresents that the magistrate judge's ruling was reversed "on other grounds," and thus incorrectly implies that the district judge agreed with the magistrate's ruling on the issue of whether LIGA is allowed to claim all the credits to which it asserts entitlement. Rather, Plaintiffs argue that the district judge did not reach the issue of whether Eagle's suggested amendment was futile because the prejudice in permitting the amendment was conclusive. R. Doc. 187, p. 8, citing *Dempster*, No. 20-95 (E.D. La. Dec. 14, 2021) at R. Doc. 373, p. 8.
[42] R. Doc. 187, p. 7, citing *Dempster*, No. 20-95 (E.D. La. Dec. 14, 2021), R. Doc. 373.

issue if Plaintiffs obtain a judgment against LIGA or Lamorak, at which time the relevant settlement agreements can be reviewed *in camera* by the Court.[43]

Next, and similar to Plaintiffs' argument challenging disclosure of the amounts paid by insurers, Plaintiffs renew the argument that LIGA is not entitled to the credits in both La. R.S. § 22:2062(A)(2) and (A)(6).[44] Rather, Plaintiffs contend that LIGA is only potentially entitled to credits under the latter subsection because that subsection specifically addresses claims against LIGA in asbestos exposure cases, "and it only applies the credit to other insurance policies of the insured (i.e., other insurance companies that also insured Eagle, McCarty, and the Avondale executive officers). It does not extend the credit to other insurance policies of other insureds," or settlements with other defendants/tortfeasors.[45] Plaintiffs argue that La. R.S. § 22:2062(A)(6) was passed specifically to provide for claims against LIGA involving asbestos exposure, and LIGA's interpretation that both subsections (A)(2) and (A)(6) apply in asbestos exposure cases renders the latter provision meaningless.[46] Plaintiffs argue that they have not settled with any insurers of McCarty, Eagle, or the Avondale executive officers to which (A)(6) applies, and their settlement with CF Industries is irrelevant.[47]

---

[43] R. Doc. 187, pp. 7-8.  Plaintiffs also argue that "it is not uncommon in asbestos litigation for copies of settlement documents to be produced *in camera* to the Court at the time of trial with the settlement amounts redacted and without production of the documents to the defendants. Settlement documents are typically produced for the purposes of determining the identity of settled parties so that the remaining parties can attempt to seek a virile share credit if they prove the fault of a settled party." *Id.* at pp. 8-9.
at trial.
[44] R. Doc. 187, pp. 9-15.  CF Industries also urges this argument.  R. Doc. 195, p. 2.  As mentioned, the portions of the briefs not germane to the instant motions are not addressed.  R. Doc. 187, p. 12 (argument regarding statutory cap).
[45] R. Doc. 187, pp. 10-11, 14.
[46] R. Doc. 187, pp. 10-11, 13-14 and citing *S. Silica of La. v. La. Ins. Guar. Ass'n*, 07-1680 (La. 4/8/08); 979 So. 2d 460 as rejecting LIGA's interpretation of the statute.  Plaintiffs argue that asbestos cases are not typical tort cases because they "typically involve decades of exposure and multiple triggered policies." R. Doc. 187, p. 11.  For this reason, Plaintiffs argue that LIGA's authority in support of credit for payments by other defendants are inapplicable because they involve regular torts. R. Doc. 187, p. 13.
[47] R. Doc. 187, p. 15.

Alternatively, Plaintiffs contend that even if subsection (A)(2) was applicable, LIGA has not shown that Plaintiffs' settlement with CF Industries is relevant because (A)(2) does not permit LIGA to get a credit for all settlements received by Plaintiffs. Rather, Plaintiffs contend that (A)(2) only applies to recovery Plaintiffs receive under another insurance policy, and Plaintiffs have not asserted any claims against any insurer of CF Industries.[48] Plaintiffs also contend that LIGA has not shown that Plaintiffs recovered under any insurance policy of CF Industries or that CF Industries had any insurance policies covering the same claims as those against LIGA's insureds. Plaintiffs argue that LIGA should be required to make these showings before Plaintiffs are required to disclose their confidential settlement terms with CF Industries.[49]

LIGA replies that it is entitled to the production of settlement information because "[t]he LIGA Law states that LIGA has no further obligation to defend an insured after the amount of money received by Plaintiffs to which it is entitled to a credit exceeds its maximum liability as set forth in the LIGA Law."[50] Further, LIGA argues that it is entitled to the information now and as settlements occur because a delay in the production causes LIGA to incur defense costs that erodes away its available funds. LIGA claims that withholding this information thwarts LIGA's ability to settle claims because, without the settlement information, LIGA cannot assess its potential obligations in the case.[51]

LIGA contends that it is unfair for Plaintiffs to seek the benefits of recovery against LIGA, yet obstruct LIGA from obtaining the information it is entitled to receive to evaluate whether the claims are covered and its potential credits. By seeking recovery, LIGA avers that Plaintiffs "have

---

[48] R. Doc. 187, pp. 15-16.
[49] R. Doc. 187, pp. 16-17. Plaintiffs argue that LIGA's non-asbestos authority only contemplates credits for settlements with insurance companies, not non-insurers. R. Doc. 187, p. 18, citing *Williams,* 256 So. 3d at 1128, and *Brown*, 165 So. 3d 1059.
[50] R. Doc. 199, p. 2.
[51] R. Doc. 199, p. 2.

opened the door" to allow LIGA to obtain information regarding settlements Plaintiffs have received.[52] Further, LIGA contends that Plaintiffs' disclosure of the fact of settlement and the names of the settling parties is insufficient, as LIGA requires the releases to learn the identity of the insurers of the settling parties, as well as to confirm the scope of the settlement for itself.[53] On this note, LIGA argues that Plaintiffs' settlement agreement with CF Industries should be produced because it could identify an insurer responsible for that settlement. LIGA argues that confidentiality can be maintained through production of the documents just to LIGA or *in camera* to the Court.[54] Finally, LIGA reiterates that it is entitled to the credits in La. R.S. § 22:2062(A)(2) and is not limited to the credit in (A)(6), as found in *Dempster*.[55]

Both sides devote substantial argument to the issue of which statutory provision applies to LIGA's potential credits, *i.e.*, La. R.S. § 22:2062(A)(2), La. R.S. § 22:2062(A)(6), or both. That issue will be determined by the court at the appropriate time. For present purposes, LIGA is not entitled to take any credits yet because LIGA's insureds have not been found liable to Plaintiffs.[56] For this reason, and as ultimately determined in each case cited by the parties considering similar discovery requests by LIGA, the request for the settlement information is not ripe. *See Becnel:* "As for the request for settlement amounts paid by others and settlement agreements reflecting such payments, Defendants are clearly not entitled to discover that information at this stage of the

---

[52] R. Doc. 199, p. 4. LIGA contends that Plaintiffs' authority restricting disclosure of settlement information is not applicable because LIGA was not involved in those cases. *Id.*, citing *Allison*, 2010 WL 3384723 and *Davis,* 1990 WL 162844.
[53] R. Doc. 199, p. 4.
[54] R. Doc. 199, p. 5.
[55] R. Doc. 199, p. 9. LIGA contends that Eagle could not amend its answer because discovery was closed and the trial date was approaching, but the applicability of subsections (A)(2) and (A)(6) was not overruled.
[56] At this point, the only settlement agreement Plaintiffs have entered is with a non-insurer, which Plaintiffs argue does not give rise to a credit LIGA can take, but this is also an issue to be determined by the court at a later time, if necessary.

proceedings;"[57] *Cortez*: "the court finds the settlement amounts and settlement agreements are not discoverable at this time,"[58] and *Bouillion*: "The issue of whether the Plaintiff has used reasonable efforts to exhaust all coverage limits is premature. Plaintiff cannot attempt to completely exhaust all other coverage until it has obtained a judgement against one or more tortfeasors."[59]  LIGA's efforts to argue otherwise are unavailing. LIGA can seek this information when the issue is ripe.

### III. CONCLUSION

LIGA's request for a list of amounts paid by Mr. Reulet's health and accident insurers is denied because Plaintiffs have not compiled this information and they have produced information to permit LIGA to obtain and/or to calculate these amounts.  LIGA is not entitled to the settlement amounts or agreements at this time to evaluate potential credits because that issue is not yet ripe.

**IT IS ORDERED** that Motion to Compel Complete Responses to Discovery Requests,[60] filed by Defendant Louisiana Insurance Guaranty Association, is **DENIED.**

Signed in Baton Rouge, Louisiana on June 13, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[57] R. Doc. 196, p. 1, quoting the order at R. Doc. 196-1, pp. 1-2 (*Becnel,* No. 19-14536, (E.D. La.  Jan. 13, 2022), R. Doc. 233 (Order on Motion January 13, 2022)). LIGA intends to appeal this ruling.  R. Doc. 199, p. 4.
[58] R. Doc. 210-1, p. 1, (*Cortez*, No. 20-2389 (E.D. La., Feb. 24, 2022), R. Doc. 415 (Order)).  The *Cortez* court also held that a Fed. R. Civ. P. 26 proportionality analysis favored withholding production, as the prejudice to Plaintiffs in disclosure of confidential settlement terms outweighed the prejudice to LIGA. *Id.* at p. 3. Notably, an earlier decision in *Cortez* was relied on by LIGA for its position on the statutory construction of the LIGA law.  *See* R. Doc. 181-1, pp. 6-8.
[59] R. Doc. 194-1, p. 2, (*Bouillion*, No. 2018-2993 (Orleans Parish Civ. Dist. Ct., Jan. 5, 2022) (Written Reasons for Judgment)).  *See also* the judgment in *Brazan,* denying a very similar motion to compel filed by LIGA seeking production of settlement information without an assignment of written reasons. R. Doc. 201 attaching January 26, 2022 Judgment denying LIGA's Motion to Compel at R. Doc. 201-1, No. 2019-06170 (Orleans Parish Civ. Dist. Ct., Jan. 26, 2022) (Judgment), and LIGA's Motion to Compel and Reply in support at R. Docs. 201-2 and 202-3.  Except for the discussion of Louisiana's discovery rules (and two other discovery requests, which are related to Interrogatory Nos. 5, 7 and RFP No. 4) the *Brazan* motion is very similar to the one LIGA filed in this case. *Compare* R. Doc. 201-3 to R. Doc. 181-1.  The *Brazan* reply appears nearly identical to, and was filed only three days before, the one filed in this case, suggesting that the court considered similar information. *Compare* R. Doc. 201-2 to R. Doc. 199.
[60] R. Doc. 181.