## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JOANNE REULET, ET AL.                                          CIVIL ACTION

VERSUS

LAMORAK INS. CO., ET AL.                            NO. 20-00404-BAJ-EWD

### RULING AND ORDER

This wrongful death and survival action seeks damages related to the death of Decedent Kirk Reulet in January 2019. Plaintiffs allege that during the course of his 45-year career, Decedent—a welder—worked various marine-economy jobs where he was exposed to asbestos, ultimately causing him to develop terminal mesothelioma. Plaintiffs seek damages from dozens of Defendants—including Decedent's employers, owners of premises where Decedent worked, asbestos manufacturers and distributors, and multiple insurers—but the thrust of their claims is essentially the same as to all: Defendants dealt in asbestos and, to some degree or another, played a role in causing Decedent's exposure to the deadly product. (*See* Doc 95 at ¶¶ 94-95).

Now, Plaintiffs seek summary judgment on two discrete issues. first, whether Decedent developed mesothelioma prior to his death; and, second, whether mesothelioma resulted in Decedent's death. **(Doc. 326 at p. 1, the "Motion")**. Defendants Bayer CropScience, Inc., Hopeman Brothers, Inc., and Liberty Mutual Insurance Company (collectively, the "Opposition Defendants") have each responded to Plaintiff's Motion, opposing it in part. (Doc. 384, Doc. 395). The remaining Defendants have joined the Opposition Defendants' arguments. (*See* Doc. 414). For

reasons to follow, Plaintiffs' Motion will be granted.

## I.    RELEVANT BACKGROUND

### A. Summary Judgment Evidence

The following facts are undisputed, as set forth in Plaintiffs' Statement Of Uncontested Material Facts (Doc. 326-2, "SOF"), the Opposition Defendants' responses to Plaintiffs' SOF (Doc. 384-1 ("Bayer SOF"), Doc. 395-1 ("Hopeman SOF")), and the record evidence submitted in support of these pleadings.

In December 2018, two weeks prior to his death, Decedent was diagnosed with peritoneal mesothelioma. (SOF ¶ 1; *see* Doc. 326-4 at p. 2 (Pathology Report); (Doc. 326-8 at p. 11 (testimony of Decedent's treating oncologist Dr. Gerardo Arias)). Defendants do not dispute this fact. (*See* Bayer SOF at p. 1; Hopeman SOF at ¶ I(a)).

Decedent died on January 2, 2019. Decedent's certified Texas Death Certificate lists four "diseases, injuries, or complications … that directly caused the death": septic shock, aspiration pneumonia, multi-organ failure, and peritoneal mesothelioma. (Doc. 384-2 at p. 1).

Plaintiffs' medical experts—oncologists Stephen Kraus, M.D. and Rodney Landreneau, M.D., and gastroenterologist David Silvers, M.D.—each reviewed Decedent's medical records and testified at their respective depositions that mesothelioma caused Decedent's death. (Doc. 326-5 at pp. 13-14; Doc. 326-6 at p. 15; Doc. 326-7 at pp. 12-13).

Notably, Defendants' medical experts—oncologist Phillip Beron, M.D., and pulmonologists Andrew Ghio, M.D., and Thomas Howard, M.D.—also reviewed Decedent's medical records and ultimately agreed with this assessment. Dr. Beron

2

stated at his deposition that he did not dispute that mesothelioma was a cause of Decedent's death:

> Q. You don't dispute that Kirk Reulet had mesothelioma, do you?
>
> A. I do not.
>
> Q. And you don't dispute that mesothelioma was a cause of his death, do you?
>
> A. It's listed on the death certificate. I believe that's a true statement.

(Doc. 384-4 at p. 72).

Dr. Ghio offered testimony to the same effect, stating at his deposition that mesothelioma was "a contributor" to Decedent's death, and that mesothelioma is an underlying cause of septic shock, aspiration pneumonia, and multi-organ failure:

> Q. And you do agree that Kirk Reulet had mesothelioma and that, as a result of his mesothelioma, that caused his death?
>
> A. It was a contributor to his death. The immediate cause on the death certificate is sepsis with multi-organ failure, aspiration pneumonia, and peritoneal mesothelioma.
>
> …
>
> Q. And so, in your opinion, was the mesothelioma the underlying root cause of the other conditions?
>
> A. It certainly is associated, yes.

(Doc. 384-3 at pp. 9-10).

Dr. Howard took a slightly different tack at his deposition, offering what he described as the "purist's" view. Specifically, Dr. Howard testified that Decedent "died from … septic shock" caused by "aspiration pneumonia," which resulted from a diagnostic laparotomy. When pressed, however, even Dr. Howard admitted that, of course, Decedent would not have undergone the laparotomy but for his oncologist's

3

concern that Decedent suffered mesothelioma. Further, Dr. Howard stated that he did not "dispute the wisdom of doing an exploratory laparotomy to diagnose" Decedent's mesothelioma:

> Q. ... [Y]ou are of the opinion that mesothelioma is what ultimately caused his death?
>
> ...
>
> A. Well, no, as noted in my report, and maybe this is being too purist, but clearly what he died from was septic shock, and that comes from bacteria which gained entrance through his lung according to the clinical records and death certificate. So I believe he died from septic shock.
>
> Q. Caused by?
>
> A. As noted, aspiration pneumonia, which usually refers to inhalation of bacteria into the lung which then gets into the bloodstream and results in a clinical spectrum of signs and symptoms that we refer to as sepsis.
>
> Q. And the aspiration pneumonia was caused by what?
>
> A. Breathing in bacteria into the lung. Now, he had had a laparotomy in December, I believe on the 18th, so this would be typically referred to as a post-operative complication related to the diagnostic procedure that was done in December that led to what we are assuming was the diagnosis of peritoneal mesothelioma.
>
> Q. But the bottom line is, but for his mesothelioma he would not have had aspiration pneumonia or septic shock; correct?
>
> ...
>
> A. Well, I would say it was a complication of the diagnostic procedure that they pursued in order to make the diagnosis.
>
> Q. So the answer is yes, but for the mesothelioma he would not have had aspiration pneumonia or septic shock?
>
> ...
>
> A. Well, I -- I think the answer stands for itself. I mean, there is a variety of ways of diagnosing peritoneal mesothelioma. Certainly a

laparotomy is a pretty invasive way of doing it, and this is a complication of that. We could -- We could debate as to other ways that this might have been diagnosed that might not have had that complication, but what I would agree certainly is that the underlying mesothelioma was the reason they did the laparotomy even though they didn't realize it at the time and this was a complication of that diagnostic decision.

…

Q. And the bottom line, though, is if he hadn't had mesothelioma, he, of course, wouldn't have had to have his stomach opened up to make the diagnosis; correct?

…

A. Well, the only part of your question that I am disputing, and I am not planning today or in trial to dispute the wisdom of doing an exploratory laparotomy to diagnose this, but he did not have to have that to diagnose it. So I think it's a post-operative complication; that he would not have had the operation without the mesothelioma. I will agree with that.

(Doc. 439 at pp. 9-10).

## II.    ANALYSIS

### A. Standard

Federal Rule of Civil Procedure 56 provides that the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Rule 56 expressly allows a moving party to seek judgment on discrete components of "each claim or defense." Fed. R. Civ. P. 56(a); *see Nguyen v. Hartford Underwriters Ins. Co.*, 514 F. Supp. 3d 831, 837 n.4 (M.D. La. 2021) (Jackson, J.) ("Courts routinely enter partial summary judgments." (quoting *Louisiana CNI,*

*L.L.C. v. Landmark Ins. Co.*, No. 06-cv-112, 2007 WL 9706513, at *5 (M.D. La. July 31, 2007) (Brady, J.)).

### B. Applicable Law

To determine liability in an asbestos claim, Louisiana law applies "traditional theories of tort liability (for example, negligence and products liability)." *Rando v. Anco Insulations Inc.*, 2008-1163 (La. 5/22/09), 16 So. 3d 1065, 1089. Relevant here, this analysis "require[s] proof of causation." *Id.*

Under Louisiana law, proving "causation" does *not* require the plaintiff to show that the defendant's conduct was the sole or exclusive factor resulting in his injury. Rather,  "conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm." *Id.* (quotation marks omitted). This rule is just as firm in asbestos cases as it is in other types of litigation:

> Because of the lengthy latency period between exposure to asbestos and manifestation of the disease, cause-in-fact has been noted as the "premier hurdle" plaintiffs face in asbestos litigation. To prevail in an asbestos case a plaintiff must show, by a preponderance of the evidence, he was exposed to asbestos and he received an injury substantially caused by that exposure. When multiple causes of injury are present, a defendant's conduct is a cause-in-fact if it is a substantial factor generating plaintiff's harm.

*Id.* at 1088 (quotation marks and citations omitted).

Importantly, in an asbestos case, the "substantial factor" test extends even to the issue of what ultimately caused the decedent's death. To the point: a plaintiff is entitled to summary judgment on the issue of whether mesothelioma caused the decedent's death if the plaintiff shows that there is no material dispute that mesothelioma was a "substantial factor" in the decedent's death, even if additional

medical conditions contributed to the decedent's death. *See, e.g., Landry v. Avondale Indus., Inc.*, 2012-0950 (La. App. 4 Cir. 3/6/13), 111 So. 3d 508, 512.

### C. Discussion

As stated, Plaintiffs seek summary judgment on two discrete issues: (1) Decedent had mesothelioma; and (2) mesothelioma resulted in Decedent's death. (Doc. 326-1 at p. 1). And again, Defendants do not dispute that Decedent had mesothelioma. (*See* Bayer SOF at p. 1; Hopeman SOF at ¶ I(a)).

Thus, the only issue is whether mesothelioma resulted in Decedent's death. Defendants argue that Plaintiffs cannot prevail at summary judgment because the evidence creates "a question of fact regarding whether [mesothelioma] was the single or sole cause of [Decedent's] death." (Doc. 384 at p. 4 (emphasis in original); *accord* Doc. 395 at pp. 1-3). This argument fails because it is not supported by Louisiana law.

As set forth above, in an asbestos case a plaintiff is *not* required to prove that "mesothelioma was the sole cause of [the decedent's] death." *See Landry*, 111 So. 3d at 512. Rather, the plaintiff need only show that mesothelioma was a "substantial factor" resulting in the decedent's death. *Id.* The "substantial factor" test may be satisfied even in the face of evidence showing that additional medical conditions contributed to the decedent's death. *See id.* (rejecting defendants' argument that plaintiff was required to prove that mesothelioma was the "sole cause of [decedent's] death," and affirming "the summary judgment finding that mesothelioma was the cause of [decedent's] death," despite evidence that decedent "also suffered from cancer of the kidney and pancreas, emphysema, congestive heart failure, and diabetes").

Here, there is no material dispute that mesothelioma was a "substantial factor"

in Decedent's death. Decedent's Death Certificate lists peritoneal mesothelioma among the direct causes of death, and all *six* medical experts—Plaintiffs' experts and Defendants' experts alike—agreed that Decedent died from complications of mesothelioma. Even Dr. Howard—who, at his deposition, did his level-best to deflect attention from Decedent's mesothelioma[1]—ultimately conceded that Decedent would not have died but for the diagnostic tests necessitated by the disease.

## III.   CONCLUSION

In sum, there is no genuine dispute that Decedent suffered from mesothelioma and that mesothelioma resulted in his death. As such, Plaintiffs are entitled to partial summary judgment on these issues. Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion **For Summary Judgment That Kirk Reulet Had Mesothelioma And That Mesothelioma Resulted In Kirk Reulet's Death (Doc. 326)** be and is hereby **GRANTED** as set forth herein.

Baton Rouge, Louisiana, this 21st day of October, 2022

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[1] This is not the occasion to rule on the admissibility of Dr. Howard's testimony at trial. Still, in light of Dr. Howard's strenuous and consistent effort to avoid providing direct answers to simple questions regarding the consequences of mesothelioma—which is plain  from the face of his deposition testimony—the Court sees fit to remind Defendants that under Rule 403 even relevant evidence may be excluded "if its probative value is substantially outweighed by … confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.