UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOANNE REULET, ET AL.                                              CIVIL ACTION

VERSUS

LAMORAK INS. CO., ET AL.                                           NO. 20-00404-BAJ-EWD

RULING AND ORDER

This wrongful death and survival action seeks damages related to the death of Decedent Kirk Reulet in January 2019. Plaintiffs allege that during the course of his career, Decedent—a tradesman that worked various marine-economy jobs between the years 1972 and 2013—was exposed to asbestos, ultimately causing him to develop terminal mesothelioma. Plaintiffs seek damages from dozens of Defendants—including Decedent's employers, owners of premises where Decedent worked, asbestos manufacturers and distributors, and multiple insurers.

Among the employer Defendants is Aerojet Rocketdyne, Inc. ("Aerojet"), who is alleged to be "successor to the liability" of Barnard and Burk, Inc. ("B&B"), a now defunct contracting company that performed maintenance services for premises-Defendant CF Industries, Inc. in the 1970s. (Doc. 95 at ¶¶ 2, 86). Plaintiffs contend that, in 1974, B&B employed Decedent as a carpenter and that, in this role, Decedent worked onsite at CF Industries, where "[o]n a daily basis … he was exposed to dangerously high levels of … asbestos, in the normal routine course of his work." (Doc. 95 at ¶¶ 10, 13). Plaintiffs attribute Decedent's exposure to B&B's failure to "provid[e] a safe place to work," (Doc. 95 at ¶ 13), and now seek damages from Aerojet (as B&B's

successor) under various theories, including negligence and strict liability. (Doc. 95 at ¶¶ 94-95)

After Plaintiffs filed suit, employer-Defendant Huntington Ingalls Incorporated ("Avondale"), and Defendant Albert Bossier, Jr.—Avondale's former executive officer—each filed cross-claims against Aerojet, adopting Plaintiffs' allegations and deflecting to Aerojet any fault attributable to Avondale and Bossier resulting from Decedent's employment at B&B. (Doc. 1-9 at pp. 260-264 (Avondale's Answer and Cross-Claim); *id.* at pp. 265-269 (Bossier Answer and Cross-Claim)).

Now, Aerojet moves for summary judgment, **(Doc. 299, the "Motion")**, arguing that Plaintiffs cannot establish that Decedent was exposed to asbestos while employed at B&B, and that, in any event, "Aerojet is not the legal successor to [B&B] and cannot be held liable for its alleged tortious conduct." (*See* Doc. 299-2 at pp. 5-10). Plaintiffs and Avondale each oppose Aerojet's Motion. (Doc. 373; Doc. 376). For reasons below, Aerojet's Motion will be denied.

The summary judgment standard is well-set: to prevail, Aerojet must show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making this assessment, the Court must view all evidence and make all reasonable inferences in the light most favorable to Plaintiffs (and Avondale)—the non-moving parties. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022).

To defeat Aerojet's first argument, "Plaintiffs need only show that a reasonable jury could conclude that it is more likely than not that [Decedent] inhaled [B&B's]

asbestos fibers, even if there were only 'slight exposures.'" *See Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022) (citing *Held v. Avondale Indus., Inc.*, 95-1788, p. 5 (La. App. 4 Cir. 4/3/96), 672 So. 2d 1106, 1109). Aerojet cannot credibly dispute that Decedent worked for B&B in 1974.[1] Thus, the only real question is whether an evidentiary basis exists to support a finding that Decedent suffered asbestos exposure while working for B&B.

And here, Plaintiffs carry their burden. Charles Becnel, Decedent's childhood friend, testified at his July 7, 2020 deposition that he joined Decedent's union (Carpenter's Local 2258) in August 1974, after his discharge from the Army. (Doc. 304-1 ("Becnel Depo."[2]) at pp. 42:6-43:8). At the time, Mr. Becnel was a millwright and Decedent was a carpenter. Yet, despite different "trades," the two worked closely on union jobs, allowing Mr. Becnel to observe Decedent on a daily basis. (*Id.* at p. 12:4-16; *id.* at pp. 14:24-15:6). Mr. Becnel's first job after joining Local 2258 was working *with* Decedent *for* B&B, providing "shutdown" services onsite at CF Industries. (*Id.* at p. 43:15-18). This first "shutdown" lasted 15 to 20 days, and involved disassembling, cleaning/refurbishing, and re-assembling plant facilities and

---

[1] This employment history is reflected on Decedent's certified Social Security records, which show that Decedent received earnings from "Barnard Burk Inc % [sic] Aerojet-General Corp" during each of the first three quarters of 1974—or roughly January through September. (Doc. 376-3 at p. 4). Social Security records are self-authenticating, Fed. R. Evid. 902, *Hawbaker v. Danner*, 226 F.2d 843, 849 (7th Cir. 1955), and are frequently admitted in asbestos litigation to show a plaintiff's (or decedent's) employment history. *E.g.*, *Allen v. Eagle Inc.*, 2022-0386 (La. App. 4 Cir. 8/10/22), --- So.3d ----2022 WL 3224490 at *3 n.3; *Brindell v. Carlisle Indus. Brake & Friction, Inc.*, 2022-0153 (La. App. 4 Cir. 9/21/22), --- So.3d ----, 2022 WL 4363944 at *4.

[2] Aerojet and Plaintiffs have each produced excerpts of Mr. Becnel's deposition testimony. To avoid confusion, the Court cites only to Aerojet's excerpts, according to the page and line numbers of the original deposition transcript: *e.g.*, Becnel Depo at p. 7:20-24.

machinery. (*See id.* at pp. 13:8-14:7). Mr. Becnel testified that during the shutdown he and Decedent worked side-by-side, (*id.* at pp. 14:24-15:6); that the work required Decedent to build scaffolding in areas where asbestos-based insulation was being "torn off" steam lines, (*id.* at p. 16:2-14; *see id.* at pp. 24:20-25:16); and that as a result of these operations Decedent was exposed to and breathed asbestos-laden dust, (*id.* at p. 16:15-17:16; *id.* at pp. 84:7-85:17). Based in part on Mr. Becnel's testimony, Plaintiffs' industrial hygiene expert, Frank M. Parker, III, opines that Decedent's exposure to asbestos at B&B "most likely frequently exceeded contemporary occupational exposure limits," and "placed Decedent at significant risk for developing mesothelioma." (Doc. 376-10 at p. 4).

Aerojet objects to any consideration of Mr. Becnel's testimony, complaining that his memory of dates and events lacks "clarity." (Doc. 299-2 at p. 6). The Court is not persuaded. Perhaps the deposition transcript indicates some confusion and a few temporary lapses, but this is hardly surprising given that the events in question occurred 50 years ago. Additionally, any such confusion is attributable—at least in part—to the format of the deposition itself, which occurred via Zoom and involved a dizzying array of attorneys, who repeatedly interrupted each other (and Mr. Becnel), bickered, and even admitted to "jumping around" and asking "poor question[s]." (*See, e.g.*, Becnel Depo. at pp. 28:8-10; 44:16-46:3; 69:1-4). In other words, to the extent Mr. Becnel's testimony is unclear, counsel shoulders a substantial portion of the blame.

In any event, what Aerojet really wants is a determination that Mr. Becnel lacks credibility. But, of course, "[c]redibility determinations have no place in

4

summary judgment proceedings." *Richardson v. Oldham*, 12 F.3d 1373, 1379 (5th Cir. 1994). Viewed in the light most favorable to Plaintiffs, Mr. Becnel's testimony sufficiently establishes a genuine dispute as to these key facts: Mr. Becnel joined the union in August 1974; his first job was working a shutdown for B&B at CF Industries; in this job, he worked alongside Decedent; and in this job he and Decedent regularly inhaled asbestos dust. No more is required to defeat Aerojet's Motion. *See, e.g.*, *Williams*, 23 F.4th at 512-514. It will be for the jury to decide what weight to give Mr. Becnel's testimony at trial.

Aerojet's second argument—that there is no dispute whether it inherited B&B's liabilities—is a nonstarter. In fact, it has already been rejected by Louisiana's state courts, (*see* Doc. 376-16 at pp. 11-13; Doc. 376-17; Doc. 376-18), and for good reason. When it purchased B&B in 1981, Aerojet executed a Purchase Agreement that expressly assumed all of B&B's "Litigation" liabilities, defined broadly to include "litigation … aris[ing] after the Closing Date … demonstrably related to an event which occurred prior to the Closing Date, … in which B&B or Aerojet or any affiliate of Aerojet is … a party." (Doc. 373-2 at p. 6). Under the same agreement, B&B "assign[ed] to Aerojet all of its right, title, interest, claims and demands arising from or in connection with the Litigation, including without limitation all claims for reimbursement under applicable insurance policies, and all claims against third parties, and any other benefits which may arise." (*Id.* at p. 8).[3] There is no ambiguity

---

[3] Aerojet's assumption of B&B's "Litigation" liabilities appears in Appendix J to the Purchase Agreement. (Doc. 373-2 at pp. 6-8). Bizarrely, in its reply memorandum, Aerojet objects to the Court's consideration of Appendix J, asserting that it is "unexecuted" and "wholly

in these terms, and they are broad enough to encompass Plaintiffs' claims here.

In sum, there is plainly enough evidence to create a contest regarding whether Decedent inhaled asbestos fibers during his employment at B&B and, further, whether Aerojet inherited B&B's liabilities. Accordingly,

**IT IS ORDERED** that American Insurance Company's **Motion For Summary Judgment (Doc. 299)** be and is hereby **DENIED**.

Baton Rouge, Louisiana, this 24th day of October, 2022

**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

irrelevant." (Doc. 436 at p. 3). In a prior asbestos case, however, Aerojet—through its corporate representative Mary Magro—authenticated Appendix J and did not dispute that its plain terms transferred B&B's liabilities to Aerojet. (Doc. 373-2 at p. 4). Competent summary judgment evidence includes Aerojet's sworn statements in prior proceedings. *See Marchand v. Asbestos Defendants*, 2010-0476 (La. App. 4 Cir. 11/10/10), 52 So. 3d 196, 201, *writ denied* 2010-2732 (La. 2/11/11), 56 So. 3d 1002; *accord Hebert v. Richard*, 2015-8 (La. App. 3 Cir. 6/17/15), 166 So. 3d 1265, 1275, *writ denied*, 2015-1390 (La. 10/2/15), 178 So. 3d 991; *Bennett v. Porter*, 2010-1088 (La. App. 3 Cir. 3/9/11), 58 So. 3d 663, 669.