UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOANNE REULET, ET AL.                                        CIVIL ACTION

VERSUS

LAMORAK INS. CO., ET AL.                                     NO. 20-00404-BAJ-EWD

### RULING AND ORDER

This wrongful death and survival action seeks damages related to the death of Decedent Kirk Reulet in January 2019. Plaintiffs allege that during the course of his career, Decedent—a tradesman that worked various marine-economy jobs between the years 1972 and 2013—was exposed to asbestos, ultimately causing him to develop terminal mesothelioma. Plaintiffs seek damages from dozens of Defendants—including Decedent's employers, owners of premises where Decedent worked, asbestos manufacturers and distributors, and multiple insurers.

Among the insurer Defendants is Berkshire Hathaway Specialty Insurance Company, as successor to Stonewall Insurance Company ("Berkshire"), which is alleged to have issued two distinct umbrella liability insurance policies to manufacturer-Defendant Eagle, Inc. f/k/a Eagle Asbestos & Packing Company, Inc. ("Eagle Asbestos"), during the time that Decedent suffered harmful asbestos exposure. (Doc. 95 at ¶¶ 2, 92). Plaintiffs seek damages from Eagle Asbestos as an asbestos manufacturer, and, in turn, seek damages from Berkshire as Eagle Asbestos's alleged insurer, pursuant to Louisiana's Direct Action Statute, La. R.S. § 22:1269. *See Marriner v. Talos Petroleum, LLC*, 576 F. Supp. 3d 412, 415 (E.D. La.

2021) (Fallon, J.) ("[T]he Direct Action Statute authorizes a suit directly against the insurer when the insurance contract at issue was written or delivered … in the State of Louisiana or if the injury occurred within the state." (quotation marks omitted)).

Employer-Defendant Huntington Ingalls Incorporated ("Avondale") and Defendant Albert Bossier, Jr.—Avondale's former executive—have each filed cross-claims against Berkshire, adopting Plaintiffs' allegations and directing any fault for Plaintiffs' Eagle Asbestos-related exposure claims during the policy periods to Berkshire. (Doc. 107 at p. 8; Doc. 108 at p. 8).

Now, Berkshire moves for summary judgment. **(Doc. 296, the "Motion")**. Berkshire admits that it issued two umbrella insurance policies to Eagle Asbestos—the first spanning August 12, 1974 to August 12, 1975; the second spanning August 12, 1976 to August 12, 1977 (Doc. 296-2 at p. 2)—but nonetheless argues that there is no evidence of Decedent's exposure to any Eagle Asbestos products during either policy period. (*See id.* at p. 1). Plaintiffs oppose Berkshire's Motion. (Doc. 377). Avondale opposes Berkshire's Motion in part, arguing that a genuine dispute exists regarding whether Decedent suffered harmful exposure to Eagle Asbestos products during the *first* policy period, but tacitly conceding that the evidence is not sufficient to establish exposure during the *second* policy period. (Doc. 375). For reasons below, Berkshire's Motion will be granted in part.

The summary judgment standard is well-set: to prevail, Berkshire must show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making this assessment, the

2

Court must view all evidence and make all reasonable inferences in the light most favorable to Plaintiffs and Avondale—the non-moving parties. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022). Even so, Plaintiffs' (and Avondale's) evidence must still be concrete: "A non-movant will not avoid summary judgment by presenting speculation, improbable inferences, or unsubstantiated assertions." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quotation marks omitted); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (at summary judgment the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

Berkshire, as Eagle Asbestos's insurer, is liable for harmful asbestos exposures during the policy periods resulting from Eagle Asbestos products. *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1076 (La. 1992) ("Briefly stated, the exposure theory provides that coverage is triggered by the mere exposure to the harmful conditions during the policy period."). In other words, Berkshire's liability during the policy periods is co-extensive with Eagle Asbestos's liability. And (again), to determine Eagle Asbestos's liability at this stage—that is, to determine whether Plaintiffs can withstand summary judgment on the issue of whether Eagle Asbestos's products were a "substantial factor" contributing to Decedent's mesothelioma—"Plaintiffs need only show that a reasonable jury could conclude that it is more likely than not that [Decedent] inhaled ... asbestos fibers [from Eagle Asbestos products], even if there were only 'slight exposures.'" *See Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022) (citing *Held v. Avondale Indus., Inc.*, 95-1788, p. 5 (La. App. 4 Cir. 4/3/96),

3

672 So. 2d 1106, 1109). Of course (as always), Plaintiffs' evidence of such exposures must exceed speculation and conjecture. *See Jones*, 936 F.3d at 321; *e.g., Cortez v. Lamorak Ins. Co.*, No. 20-cv-2389, 2022 WL 1320429, at *6 (E.D. La. May 3, 2022) (Vance, J.) (granting summary judgment where the evidence did not establish plaintiff's proximity to Eagle Asbestos products during Berkshire's policy periods).

In their opposition, Plaintiffs argue that Decedent was doubly-exposed to harmful Eagle Asbestos products during the policy periods: (1) Decedent suffered second-hand exposure through his father Pierre Reulet due to Pierre's employment at Avondale from January 1964 to October 1977 (encompassing Berkshire's first *and* second policy periods), (Doc. 377 at pp. 2-3), and (2) Decedent suffered first-hand exposure to harmful Eagle Asbestos products in 1974 (during Berkshire's *first* policy period), when Decedent worked as a carpenter for Barnard and Burk, Inc. ("B&B"), a now defunct contracting company that performed maintenance services for premises-Defendant CF Industries, Inc., (*id.* at pp. 11-18).

To establish Pierre Reulet's proximity to Eagle Asbestos products during his tenure at Avondale, Plaintiffs cite deposition testimony of Dwight Granier, Pierre's co-worker at Avondale. Sure enough, at his deposition Mr. Granier testified that on "numerous" occasions he observed Pierre Reulet in close contact with Eagle Asbestos insulation when it was being removed from its packaging, exposing Pierre to asbestos dust. (Doc. 377-5 at p. 10-11). Mr. Granier also stated, however, that the *last* exposure he witnessed occurred in "the late sixties," well before either of Berkshire's policy periods. (*Id.* at 91; *see also* Doc. 296-6 at pp. 6-7). Having failed to direct the Court to

4

any evidence establishing Pierre Reulet's exposure to Eagle Asbestos products *during* the policy periods, Plaintiff's second-hand exposure claim against Berkshire must be dismissed.[1] *See Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) ("If the party with the burden of proof cannot produce any summary judgment evidence on an essential element of [its] claim, summary judgment is required.").

Plaintiffs' direct exposure claim is another matter. In support, Plaintiffs (and Avondale) cite deposition testimony of Charles Becnel, Decedent's co-worker at B&B in 1974. (Doc. 375 at pp. 4-7; Doc. 377 at pp. 11-18). As set forth in the Court's recent Order denying Defendant Aerojet Rocketdyne, Inc.'s motion for summary judgment, Mr. Becnel's testimony sufficiently establishes a genuine dispute as to these key facts: Mr. Becnel joined Decedent's union in August 1974 (during Berkshire's first policy period); Mr. Becnel's first job for the union was working a shutdown for B&B at CF Industries; in this job, Mr. Becnel worked alongside Decedent; and in this job Mr. Becnel and Decedent regularly inhaled asbestos dust. (*See* Doc. 470 at pp. 3-5). Relevant here, Mr. Becnel's testimony also sufficiently establishes a link between the asbestos dust inhaled by Decedent and Eagle Asbestos's insulation:

Q: Okay. Do you remember who the insulation contractor was out there

---

[1] Plaintiffs' opposition cites additional testimony of former Avondale employees Callen Dempster, Jerry Savoie, and Burnette Bordelon—who each recalled Eagle Asbestos products on-site during their respective tenures at Avondale—as well as Avondale invoices showing that Eagle Asbestos supplied asbestos-containing products to Avondale during Berkshire's policy periods. (*See* Doc. 377 at pp. 4-5). Critically, none of this evidence establishes Pierre Reulet's proximity to Eagle Asbestos's products. As such, it may lend support to Plaintiffs' additional claims against various other Defendants in this case, but it cannot save Plaintiffs' second-hand exposure claim against Berkshire. *See, e.g., Cortez*, 2022 WL 1320429, at *6-8 (evidence showing generally that Eagle Asbestos products were on-site at Avondale during asbestos-insurers' policy periods cannot create a material dispute regarding plaintiff's exposure to asbestos dust absent evidence establishing plaintiff's proximity to such products).

in '74?

A: That was Eagle Insulators.

Q: And the Eagle Insulators would have been the ones that were out there doing the work that we talked about before [tearing insulation off steam lines and creating insulation dust] ... and that kind of thing, correct?

...

A: Yeah, because everybody had their own craft. You know, the insulators did the insulating and, you know, everybody did their own craft.

...

Q: You mentioned earlier that you saw Eagle out at CF when you were there in 1974. How did you know that those insulators worked for Eagle?

A: Because they'd bring in trucks of insulation, and they had "Eagle" on their hat and they had the "Eagle" on the boxes; Eagle insulators on the truck -- on the truck, the side of the truck.

(Doc. 375-2 at pp. 7-9, 14-15). As stated previously, based (in part) on Mr. Becnel's testimony, Plaintiffs' industrial hygiene expert, Frank M. Parker, III, opines that Decedent's exposure to asbestos at B&B "most likely frequently exceeded contemporary occupational exposure limits," and "placed Decedent at significant risk for developing mesothelioma." (Doc. 376-10 at p. 4).

On this record, a material dispute plainly exists regarding whether Decedent inhaled asbestos fibers from Eagle Asbestos products while working for B&B in August 1974, during Berkshire's first policy period. Plaintiffs and Avondale have carried their burden, and Berkshire's request for judgment as to Decedent's first-hand asbestos exposure during the first policy period must be denied. *See Williams*, 23 F.4th at 512; *Cole*, 599 So. 2d at 1076.

6

In sum, Plaintiffs and Avondale have carried their burden to establish a material dispute regarding whether Decedent inhaled harmful asbestos-fibers from Eagle Asbestos products during Berkshire's *first* policy period (August 12, 1974 to August 12, 1975). By contrast, Plaintiffs have not established a material dispute regarding whether Decedent inhaled harmful asbestos-fibers from Eagle Asbestos products during Berkshire's *second* policy period (August 12, 1976 to August 12, 1977). Accordingly,

**IT IS ORDERED** that Berkshire's **Motion for Summary Judgment (Doc. 296)** be and is hereby **GRANTED IN PART**, and that Plaintiffs claim against Berkshire related to harmful asbestos exposure during the second policy period (August 12, 1976 to August 12, 1977) be and is hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiffs' second-hand exposure claim against Berkshire resulting from Pierre Reulet's alleged exposure to Eagle Asbestos products during the policy periods be and is hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that in all other respects Berkshire's Motion be and is hereby **DENIED**.

Baton Rouge, Louisiana, this 31st day of October, 2022

*[signature]*

JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA